SEP 6 2022 PM3:57
FILED-USDC-CT-NEW HAVEN

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

V.W., as Parent and Natural
Guardian of Child V.V.,

                          Plaintiff,

                -against-

Foote School Association Incorporated; Carol
Maoz, individually and as the Head of School of
the Foote School Association Incorporated; Aléwa
Cooper, individually and as the Head of School of
the Foote School Association Incorporated; David
Sklar, individually and as the Business
Manager/CFO of the Foote School Association
Incorporated; and Chrissy Khachane, individually
and as the Head of Lower School of the Foote
School Association Incorporated,

                        Defendants.

Case No.: 22cv1127(SRU)

September 6, 2022

Jury Trial Demanded

## COMPLAINT

    Plaintiff V.W. (hereinafter "Plaintiff" or "Plaintiff Mother") in this action against

Defendants the Foote School Association Incorporated ("Foote School"), Carol Maoz in her

professional and individual capacity; Aléwa Cooper in her professional and individual capacity;

David Sklar in his professional and individual capacity; and Chrissy Khachane in her professional

and individual capacity (collectively "Defendants"), hereby alleges upon information and belief as

follows:

## PRELIMINARY STATEMENT

    1.    This lawsuit is arising out of severe and pervasive unlawful actions inflicted on

Plaintiff and her child by the Child V.V.'s school, the Foote School and the individuals who

committed the acts. The discrimination and retaliation have been permitted to exist and continue

from the very beginning of the Child's enrollment at the Foote School till this date.

2.      As part of its core values, the Foote School claims, "[a]bove all, [Foote School] nurture a lifelong love of learning and teaching in [its] students and faculty. Committed to excellence, teachers lead children to question, to discover connections, to think independently, and to learn by doing. [Foote School's] community is inclusive; [Foote School] value difference and challenge prejudice. [Foote School] give [its] students the skills to explore the worlds complexity with pleasure and purpose and to respect themselves and each other," published in its annual Return of Organization Exempt From Income Tax, Form 990, filed with the Internal Revenue Service, U.S. Department of the Treasury, open to public inspection. See, for example, the Foote School's Tax Year 2020 Form 990, for the tax year beginning July 1, 2019 and ending June 30, 2020 online at https://apps.irs.gov/pub/epostcard/cor/060646647_202006_990_ 2021022617764527.pdf (all internet materials as last visited August 29, 2022). A copy of the Foote School's Tax Year 2020 Form 990 is attached hereto as Exhibit "A". Rule 10(c) of the Federal Rules of Civil Procedure.

3.      In addition, between 2015 and 2019, the Foote School annually certified, under penalty of perjury, compliance with the applicable requirements of "Racially Nondiscriminatory Policy" for its qualification as an exempt corporation under 26 U.S. Code § 501(c)(3) as an educational organization within the meaning of 26 U.S. Code § 170(b)(1)(A)(ii).

4.      Unfortunately, such oaths and promises contradict what has been going on at the Foote School.

5.      As detailed below, the Foote School failed its oaths and promises by its knowing discrimination against Plaintiff and her child and by its knowing participation and ratification of discrimination and harassment toward Plaintiff and her child that created a hostile educational environment where the Foote School's employees are so emboldened to engage in flagrant

discrimination and retaliation against a parent and a minor student that some of the act amounts to battery, threat by words, and custodial interference.

6.      Prior to the Child V.V.'s enrollment at the Foote School, Plaintiff twice applied, in two consecutive years, to the Foote School for Child V.V. to attend the Foote School's Kindergarten program for the 2018-2019 and 2019-2020 school years, respectively. During the application process, Plaintiff participated multiple rounds of parent-interview with the Foote School Admissions Office. The Foote School's Admission Committee offered Child V.V. the enrollment in its Kindergarten program for the 2019-2020 school year, beginning the first day of school on September 3, 2019.

7.      On September 3, 2019, Child V.V. arrived at the Foote School as a healthy, confident, and empathetic grade-schooler who was eager to engage and learn with natural curiosity.

8.      Commencing on September 4, 2019, in return for Plaintiff's entrustment to the Foote School with her child's education, the Foote School subjected Plaintiff and her child to blatant discriminatory and retaliatory acts, with vicious discrimination, harassment, intimidation, and retaliation, led by the Head of School and the Head of Lower School, colluding with the School's employees. Plaintiff's voice for "zero tolerance for discrimination and intimidation, treating others with respect and kindness, and respecting individual differences in background" to engage with the Foote School was, however, met with retaliation.

9.      Accordingly, in this action, Plaintiff seeks declaratory, injunctive, and equitable relief, as well as, monetary damages to redress the defendants' conspiracy to injure Plaintiff and negligence to deprive Plaintiff of her right to privacy and fundamental right to make decisions concerning the care, custody, and control of her child guaranteed under the Due Process Clause of the Fourteenth Amendment of the United States Constitution in violation of 42 U.S.C.§§ 1981,

1983, 1985, and 1986. This complaint opposes the defendants' ongoing unlawful discrimination on the basis of race, sex, national origin, ancestry, disability, record of disability, and/or because the defendants regarded Plaintiff Mother and/or her minor child as disabled in violation of 42 U.S.C. §§ 1981 and 1983 and the (1) Americans with Disabilities Act as amended, ("ADA") 42 U.S.C. § 12101 *et seq*.; (2) Title VI of Civil Rights Act as amended, 42 U.S.C. § 2000d *et seq*.; (3) Title IX of the Education Amendments of 1972 as amended, 20 U.S.C. § 1681 *et seq*.; (4) Section 504, Rehabilitation Act of 1973 as amended, 29 U.S.C. § 794; (5) Equal Educational Opportunities Act of 1974, 20 U.S.C. § 1701 *et seq*.; (6) Art. XXI of Amendments to the Constitution of the State of Connecticut; and (7) Fourteenth Amendment of the United States Constitution. The plaintiff also alleges claims for breach of contract, tortious interference with contract, and intentional infliction of emotional distress.

10.     Defendants own, lease, operate or control a place of public accommodation within the meaning of the ADA, 42 U.S.C. § 12181 (7)(j), the Foote School Association Incorporated, with its principal place of business located at 50 Loomis Place, New Haven, CT, 06511, which operate program or activity within the meaning of (1) Section 504, Rehabilitation Act of 1973, 29 U.S.C. § 794(b)(3)(A)(ii), (2) Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d-4a(3)(A)(ii), and (3) Title IX of the Education Amendments of 1972, 20 U.S.C. § 1687(3)(A)(ii); and has violated and is violating the above-mentioned laws. Defendants ignored the explicit legal requirement for making the Foote School, an elementary and secondary school, which is a public accommodation, accessible to individuals with disabilities.

11.     This action seeks to right that wrong by recompensing Plaintiff and making Defendants' place of public accommodation fully accessible so that Plaintiff and her minor child

and other similarly situated can have the full and equal educational opportunity that Defendants provide to non-disabled peers and majority students.

12.     Defendants are also liable for the acts and omissions that violates the Family Educational Rights and Privacy Act, ("FERPA") 20 U.S.C. § 1232g and Conn. General Statutes §§ 10-15b(c) and 10-188 by failing to comply with lawfully issued subpoena.

13.     Defendants are also vicariously liable for the acts and omissions that violates Conn. General Statutes § 17a-83 by fraudulently or maliciously reporting mental disorder of Child V.V.

14.     Defendants are also vicariously liable for the acts and omissions that violates 18 U.S. Code § 1621(2) by falsely certifying the Foote School was in compliance with the applicable requirements of "Racially Nondiscriminatory Policy" for its qualification as an exempt corporation under 26 U.S. Code § 501(c)(3) as an educational organization within the meaning of 26 U.S. Code § 170(b)(1)(A)(ii) in the tax year of 2019 and thereafter.

## JURISDICTION AND VENUE

15.     This court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1986, 12188, and 2000d *et seq.*, and 28 U.S.C. §§ 1331, 1332, and 1343, as this action involves federal questions regarding the conspiracy to and the deprivation of Plaintiff's and/or her Child V.V.'s rights under 42 U.S.C. §§ 1981, 1983 and 1985, the ADA, the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972; Equal Educational Opportunities Act of 1974, Section 504, Rehabilitation Act of 1973, and the Fourteenth Amendment to the United States Constitution. 42 U.S.C. § 1986 specifically provides that "any number of persons guilty of such wrongful neglect or refusal mentioned in § 1985 may be joined as defendants in the action."

16.     This court also has jurisdiction over this matter pursuant to 20 U.S.C. § 1706 that provides, in relevant part, "an individual denied an equal educational opportunity, … may institute

a civil action in an appropriate district court of the United States against such parties." This action involves the denial of an equal educational opportunity of the plaintiff's Child V.V. against the defendants under the Equal Educational Opportunities Act of 1974, 20 U.S.C. § 1701 *et seq.*

17.     Plaintiff also asserts the supplemental jurisdiction of the court for state statutory claims pursuant to the Conn. General Statutes §§ 10-15b(c), 10-188, 17a-83, 17a-504, 17a-101a(b)(1), 53a-97 and 53a-98 and Art. XXI of Amendments to the Constitution of the State of Connecticut. Federal supplemental jurisdiction is asserted pursuant to 28 U.S.C. § 1367.

18.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy, exclusive of interest and costs, exceeds $75,000.00 and there is diversity of citizenship between Plaintiff and the Defendants. The plaintiff is a citizen of Connecticut and New York. The Foote School Association Incorporated owns, leases, operates or controls a place of public accommodation (within the meaning of the ADA, 42 U.S.C. § 12181 (7)(j)) with its principal place of business located at 50 Loomis Place, New Haven, CT, 06511, upon information and belief, since June 29, 1931. The Foote School Association Incorporated is incorporated and maintains its principal place of business in the State of Connecticut. The operations of Defendant Foote School are programs or activities (within the meaning of (1) Section 504, Rehabilitation Act of 1973, 29 U.S.C. § 794(b)(3)(A)(ii), (2) Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d-4a(3)(A)(ii), and (3) Title IX of the Education Amendments of 1972, 20 U.S.C. § 1687(3)(A)(ii)) as the entire corporation is principally engaged in the business of providing education. Defendant Foote School is further defined as a local educational agency within the meaning of the Equal Educational Opportunities Act of 1974, 20 U.S.C. § 1720(b) and deemed to "transport a student if any part of the cost of such student's transportation is paid by such agency" under 20 U.S.C. § 1720(e). Upon information and belief, Defendant Carol Maoz

resides in Stamford, Connecticut; Defendant Chrissy Khachane resides in Orange, Connecticut; and Defendant Aléwa Cooper resides in New Haven, Connecticut. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391.

## **PARTIES**

19.     Plaintiff is an Asian, female, 39-year-old mother of Child V.V. ("Child") who is an 8-year-old female born to Plaintiff and enrolled at the Foote School Association Incorporated since September 3, 2019.

20.     Initials are used in the caption of this action to preserve the confidentiality of the minor in conformity with the privacy provisions of the Family Educational and Privacy Rights Act, 20 U.S.C 1232g(b), and Federal Rule of Civil Procedure 5.2(a).

21.     Plaintiff resides in New Haven, Connecticut and Queens, New York.

22.     Plaintiff was born in the People's Republic of China, moved to the United States in 2006, and obtained the citizenship of the United States in 2010.

23.     Defendant, the Foote School Association Incorporated, (hereinafter "Foote School") is a nonstock corporation principally engaged in the business of providing elementary and secondary education with its principal place of business located at 50 Loomis Place, New Haven, CT, 06511. Upon information and belief, the Foote School is incorporated, registered, and does business in the State of Connecticut as an elementary and secondary school in New Haven, Connecticut. A membership in the Foote School Association is a contract between the Association and the member and entitles a member to elect or appoint one or more members of the governing body of the Corporation of the Foote School Association Incorporated, and the benefits and privileges of the contractual relationship of membership in the Foote School Association include, but not limited to, grants and financial assistance awarded to a member on the basis of his or her

financial need. Under the charter, bylaws, or other governing instrument of the Corporation, "any parents or guardians of the person of a child enrolled and in attendance at the school managed or operated by the association shall be members of the association. Membership in the association shall terminate when a member ceases to have a child enrolled in and attending said school, provided that any member who is serving as director of the association when he or she ceases to have a child enrolled in the school shall continue to be a member until the expiration of his or her term as director." *See* Exhibit "A", p. 46.

24.     Upon information and belief, the Foote School in the calendar year 2019 was an exempt corporation under 26 U.S. Code § 501(c)(3) as an educational organization within the meaning of 26 U.S. Code § 170(b)(1)(A)(ii) and subject to the qualification, publicity, and compliance requirement of "Racially Nondiscriminatory Policy" in the Foote School's charter, bylaws, or other governing instrument, or in a resolution of its governing body as required by the Internal Revenue Service, U.S. Department of the Treasury, to be eligible to receive charitable contributions deductible from income taxes under §§ 170(a)(1) and (c)(2) of the Internal Revenue Code, 26 U.S.C. § 170(a)(1) and (c)(2). Rev. Proc. 75-50, 1975-2 Cum. Bull. 587. In 2019, the Foote School certified, under penalty of perjury, compliance with the applicable requirements of sections 4.01 through 4.05 of the Revenue Procedure, in relevant part, as follows, the school must state its nondiscrimination policy in its organizational charter, *id.*, § 4.01, and in all of its brochures, catalogs, and other advertisements to prospective students, *id.*, § 4.02; the school must make its nondiscrimination policy known to the entire community served by the school and must publicly disavow any contrary representations made on its behalf once it becomes aware of them, *id.*, § 4.03; the school must have nondiscriminatory policies concerning all programs and facilities, *id.*, § 4.04, including scholarships and loans, *id.*, § 4.05. Under its charter and in accord its "Racially

Nondiscriminatory Policy," the right to enter and enforce a membership contract between the Association and any parents or guardians of the person of a child enrolled and in attendance at the school managed or operated by the Association may not be denied by the Association on the basis of race.

25.     Upon information and belief, the Foote School receives federal financial assistance and is subject to the (1) Americans with Disabilities Act as amended, 42 U.S.C. § 12101 *et seq*.; (2) Title VI of Civil Rights Act as amended, 42 U.S.C. § 2000d *et seq.*; (3) Title IX of the Education Amendments of 1972 as amended, 20 U.S.C. § 1681 *et seq*.; (4) Section 504, Rehabilitation Act of 1973 as amended, 29 U.S.C. § 794; (5) Equal Educational Opportunities Act of 1974, 20 U.S.C. § 1701 *et seq*.; and (6) Fourteenth Amendment of the United States Constitution.

26.     Upon information and belief, Defendant Carol Maoz was employed by and operated the Foote School as the "Head of School" and at all times herein acting in her capacity as an agent of the Foote School in the calendar year of 2019 until July 1, 2020. Defendant Aléwa Cooper is employed by and operates the Foote School as the "Head of School" starting July 1, 2020 till this date and at all times herein was acting in her capacity as an agent of the Foote School, replacing Defendant Carol Maoz. Defendant Chrissy Khachane is employed by and operates the program or activity of the Kindergarten and elementary education up to Grade 5 at the Foote School as the "Head of Lower School" and at all times herein was acting in her capacity as an agent of the Foote School. Defendant David Sklar is employed by and operates the Foote School as the "Business Manager/CFO" and at all times herein was acting in his capacity as an agent of the Foote School. Defendant David Sklar, acting in his capacity as an agent of the Foote School, certified, under penalty of perjury, that the Foote School was in compliance with the applicable

requirements of sections 4.01 through 4.05 of the Rev. Proc. 75-50, 1975-2 Cum. Bull. 587 in the calendar year of 2019.

27.     Upon information and belief, Defendant Carol Maoz is a Caucasian adult resident of Stamford, Connecticut.

28.     Upon information and belief, Defendant Chrissy Khachane is a Caucasian adult resident of Orange, Connecticut.

29.     Upon information and belief, Defendant Aléwa Cooper is an African-American adult resident of New Haven, Connecticut.

30.     Upon information and belief, Defendant David Sklar is a Caucasian adult resident of Wilton, Connecticut.

31.     Plaintiff's relationship to the defendants is further defined in the Connecticut Duties of Parents, Conn. Gen. Stat. § 10-184 *et seq*. Conn. Gen. Stat. § 10-188 provides, in relevant part, "Attendance of children at a school other than a public school shall not be regarded as compliance with the laws of the state requiring parents and other persons having control of children to cause them to attend school, unless the teachers or persons having control of such school file with the Commissioner of Education student attendance reports at such times and in such forms as the commissioner prescribes, and make such reports and returns concerning the school under their charge to the Commissioner of Education as are required from boards of education concerning the public schools, except that no report concerning finances shall be required."

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

32.     Since September 3, 2019, Child V.V. has been enrolled at the Foote School. She enrolled as an incoming kindergartener.

33.     Starting April 4, 2017, Plaintiff first contacted the Foote School via email and expressed her interest in applying to the School for Child V.V. to attend its Kindergarten program. On April 14, 2017, the Director of Admissions and Outreach at the Foote School, Rachelle Byron, together with the Associate Director of Admissions at the Foote School, Kelly Small, replied to Plaintiff's email and invited Plaintiff to visit the School for a Parent Tour. Subsequently, Plaintiff received an informational packet for prospective students including its brochures and catalogues of its program or activity offered at the Foote School, through Kindergarten to Grade 9.

34.     Between April and September 2017, Plaintiff had frequent email exchanges with the Director of Admissions and Outreach, Rachelle Byron, at the Foote School scheduling the Parent Tour, and inquiring about the application process to its Kindergarten program. On September 25, 2017, the Director of Admissions and Outreach emailed Plaintiff that the Foote School would launch a new website in early October which allowed applications of incoming students to be submitted through its online Parent Portal.

35.     Plaintiff attended the Foote School's admission events on campus in early October 2017, started the application for Child V.V. to attend the Kindergarten program at the Foote School on October 19, 2017, and submitted the complete application package on December 26, 2017, through its newly-launched online Parent Portal.

36.     On December 26, 2017, Plaintiff also scheduled a "kindergarten parent interview" appointment with the Director of Admissions and Outreach at the Foote School.

37.     On January 11, 2018, Plaintiff met with the Director and Associate Director of Admissions, Rachelle Byron and Kelly Small, for a "kindergarten parent interview" at the Foote School.

38.    During the spring of 2018, Plaintiff received a letter from the Director of Admissions and Outreach stating that Child V.V. was not admitted to the Kindergarten program at the Foote School.

39.    In May 2018, Plaintiff contacted the Director of Admissions and Outreach to seek for explanation of its decision in denying Child V.V.'s admission. The Director of Admissions and Outreach explained that the Admission Committee considered Child V.V.'s age, at that time, between 5 and 6, though met the age requirement for its Kindergarten program but a disadvantage. But the Director of Admissions and Outreach encouraged Plaintiff to re-apply for its Kindergarten program next year in the school year of 2019-2020.

40.    On November 1, 2018, the Foote School Admissions Office emailed Plaintiff to advertise its program and solicit Plaintiff to re-apply for Child V.V. in the school year of 2019-2020.

41.    On November 16, 2018, Plaintiff attended another "kindergarten parent interview" appointment with the Foote School Admissions Office on campus.

42.    On January 25, 2019, Plaintiff submitted the complete application package to the Foote School, through its online Parent Portal, in applying for the Kindergarten program for Child V.V to attend the Foote School in the school year of 2019-2020.

43.    On February 16, 2019, the Foote School emailed Plaintiff confirming that Child V.V.'s application to its Kindergarten program was complete and the admission decision would be issued by March 10.

44.    On March 9, 2019, the Foote School notified Plaintiff that it offered Child V.V. the enrollment to its Kindergarten program in the incoming Fall 2019.

45.    Shortly after, Plaintiff received invitations to attend events for parents of accepted students at the Foote School; some of the invitations were from the parent members of the Foote School Association.

46.    On April 2, 2019, Plaintiff submitted Child V.V.'s "enrollment contract" to the Foote School Admissions Office through the online Parent Portal.

47.    In May 2019, Plaintiff received numerous emails regarding Child V.V.'s enrollment and registration at the Foote School.

48.    On May 4, 2019, the Head of Lower School, Chrissy Khachane, sent Plaintiff an email invitation with the subject of "Chrissy Khachane Meet & Greet."

49.    On May 29, 2019, Plaintiff had a meeting with Chrissy Khachane on campus at the Foote School, upon her invitation, to discuss Child V.V.'s upcoming enrollment at the Foote School.

50.    On May 13, 2019, the Registrar of the Foote School, Erika Villa, emailed Plaintiff that she had created a School Forms Online account for Child V.V.'s family and can be accessed through the link provided in her email. The relevant School Forms included, but not limited to, Parent/Directory Information; Grandparent/Special Friends Form; Emergency Contacts Form; Medical Information Form; Health Assessment Record; and Modern Language Choice Form.

51.    On August 23, 2019, the Communications Office of the Foote School sent Plaintiff an email to provide information for Plaintiff to log into the online Parent Portal on the Foote School website, stating the Parent Portal provided the access for a parent to a non-exhaustive list of resources, including School Forms Online, Child V.V.'s end-of-term reports, links to teachers' blogs, calendars and athletic schedules, links to the library catalog, latest news, and media galleries.

52.    On August 27, 2019, the Foote School Admissions Office emailed Plaintiff regarding the Orientation Day schedule of August 30, 2019.

53.    On August 28, 2019, the Registrar of the Foote School, Erika Villa, emailed Plaintiff regarding the requirement of submission of the School Forms pertinent to Child V.V.'s enrollment at the Kindergarten program.

54.    On August 29, 2019, a marketing email from the Head of School sent directly from the Foote School's no-reply email address to Plaintiff, stating the rights, privileges, and benefits of parents and students at the Foote School, including the benefits and advantages of "using the parent & student portals" on the Foote School's website and services offered at the Student Health Office of the Foote School.

55.    On August 30, 2019, the Registrar of the Foote School reminded Plaintiff in an email regarding the deadline of completing the required School Forms available online through Parent Portal on the Foote School's website.

56.    The first day of school for Child V.V.'s Kindergarten program started on September 3, 2019. The School began daily at 8:15 am and dismissal time was 3:00 pm from Monday to Thursday and 2:15 pm on Friday. The Foote School offered an optional After School Program to students in Grades Kindergarten through Six for an additional fee that operated from 3:00-5:30 pm from Monday to Thursday and 2:15-5:30 pm on Friday.

57.    According to the Foote School's Dismissal Policy in the 2019-2020 Foote School Parent Handbook, "Students not in the After School Program (or participating in other supervised activities) who remain on campus after 3:20 p.m. must wait for pick-up in the main office." *Supra*, p. 31. The After School Program ("ASP") provided the only condition for students to remain on

campus after the dismissal time and allow parents to pick up students from their classroom during

the ASP hours, in relevant part:

> "Students in the After School Program (including Middle School students) need to be
> signed out and picked up from their After School room. Students may not wait to be picked
> up on Loomis Place. After 5:30 p.m., all ASP students (K-9) must be picked up from the
> After School office in the Kindergarten building." *Ibid.*

58.     On September 4, 2019, the second day of school, i.e., the second of Child V.V.'s

enrollment at the Foote School, Plaintiff went to the Foote School after the dismissal time, during

the After School Program hours, to pick up Child V.V. in accord with the Foote School's policy.

However, the Foote School employees stalked and harassed Plaintiff in preventing Plaintiff from

picking up her child at the Foote School, in concert with the Head of School, Carol Maoz, and the

Business Manager/CFO, David Sklar, who knowingly made a false, oral report to the New Haven

Police, Officer Harpe, J.A. (Badge No. 40801), alleging under color of the federal and state

constitutions, statutes, laws, rules, regulations, customs and usages of the State of Connecticut,

that Plaintiff Mother was "ridiculous,"…"mentally ill,"…"Chinese,"…"[Plaintiff's] parents don't

speak any English,"… and Plaintiff coming to the Foote School picking up her child "is creating

a scene"…"creating a problem" ... "for students and her own daughter;" … "Because [Plaintiff] is

mentally ill, the likelihood of her showing up again to pick up her daughter [at the Foote School]

is pretty high;" … "[the Foote School] need like an extra teacher for … just to make sure that

[Child V.V.] is not taken;"… "every time Plaintiff shows up, [the Foote School] have to call the

husband or call the police;"… "and then [Plaintiff] said to [Carol Maoz], basically, ... [Plaintiff]

wanted [Carol Maoz] to always call [Plaintiff] if someone else came to pick up, including [E.V.],

the father, and [Carol Maoz] said to [Plaintiff] that [Carol Maoz] couldn't do that;" … "So [the

Foote School] had an arrangement that if the [Plaintiff] mom came, [Carol Maoz] would call [E.V.,

the father];" … "Well, [Plaintiff picking up her Child from the Foote School] isn't working like

[the Foote School] can't do this every day. [Carol Maoz] mean, first of all [the Father of the Child] has to work."

59.    After making a false, oral report to the New Haven Police Officer Harpe (Badge No. 40801), Carol Maoz, acting in her capacity as the Head of School of the Foote School, wrote Plaintiff a statement, signed and dated September 4, 2019, stating as follows:

> "As per the court order dated August 29, 2019 stating that [Plaintiff] may not interfere with the custody arrangement or the educational program of [Child V.V.], [Foote School] can no longer allow you to come on [Foote School] campus. If [Plaintiff] do not abide, [Foote School] will call the New Haven Police. This will remain in place until [Plaintiff] can provide documentation from the court stating otherwise."

60.    On January 25, 2022, the Head of Lower School, Chrissy Khachane, told Plaintiff Mother over the phone, alleging that "[Foote School] still have the same policy in place … that [Plaintiff] was not permitted on campus. It is still standing,"… "legally, while [Plaintiff's Child] is on campus, [the Child] is [Foote School's] property," in infringing upon Plaintiff's fundamental liberty interest in the care, custody, and control of her child protected under the Fourteenth Amendment of the United States Constitution. See e.g. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Martocchio v. Savoir*, 153 Conn. App. 492, 101 A.3d 953 (2014); *Roth v. Weston*, 259 Conn. 202, 789 A.2d 431 (2002).

61.    The Father of Child V.V. (hereinafter "E.V."), whom was referred to by the Foote School in Carol Maoz's false, oral report to the New Haven Police Officer Harpe (Badge No. 40801), also as "the husband" of Plaintiff's, (see *ante*, ¶ 58) is a Caucasian male who is employed at the Department of Economics at the Yale University as faculty where Plaintiff enrolled, at that time, as a Ph.D. student in the doctoral program in the same Department of Economics as E.V. is.

62.    The minor child V.V. is the only child issued from the prior marriage between Plaintiff Mother and E.V. that was dissolved pursuant to New York Consolidated Laws, Domestic Relations Law § 170(7). The parents' JUDGMENT OF DIVORCE was entered in the Supreme

Court of the State of New York, County of New York, on September 10, 2015, *Cooper, J.* (hereinafter referred to as the "Foreign Matrimonial Judgment" in accordance with Conn. General Statutes §§ 46b-70 to 46b-75). The parents settled and resolved the issues raised in the divorce action by the STIPULATION OF SETTLEMENT AND AGREEMENT dated June 18, 2015 (hereinafter "Settlement Agreement") incorporated, *but not merged into*, the Foreign Matrimonial Judgment. The Settlement Agreement provides its own independently survived "Binding Effect" upon the parents from their Foreign Matrimonial Judgment as well as a waiver for modification. Since the parents entered into the Settlement Agreement on June 18, 2015, the Settlement Agreement had been executed accordingly up till the second of school at the Foote School on September 4, 2019.

63.     Pursuant to the Foreign Matrimonial Judgment and Article 2 of the Settlement Agreement, the parents share joint legal custody of, and joint decision-making rights and responsibilities concerning the Child, and Plaintiff is the primary custodian of the Child and facilitates Respondent's visitation schedule. If the parents are unable to agree on a decision regarding a material matter concerning the Child (including whether an issue is a material matter), the parents shall exhaust the first remedial attempt in good faith to resolve their differences and work together to reach a resolution with Parent Coordinator, before either parent has the right to invoke a Court of competent jurisdiction.

64.     Provision 7, Article 2 of the Settlement Agreement provides:

"Each party shall be entitled to complete detailed information regarding from any physician, psychologist, dentist, or other health professional involved in the treatment of [Child V.V.] and any educator or institution attended by [Child V.V.] Each party has the right to receive copies of any reports rendered by any such health care or educational professionals or institutions (including periodic report cards), as well as a summary of any information received via oral communication."

Provision 7, Article 2 of the Settlement Agreement provides:

"Each party has the right to attend all school functions (including PTA), camp, after-school programs (special events), extra-curricular activities, graduations and other special events, and shall keep the other parent informed of any such events, should they not be reflected on the school calendar."

Provision 12, Article 2 of the Settlement Agreement provides:

"Both parents shall be listed as the parents of [Child V.V.] in connection to any application, registration or filing, which may be filed by or on behalf of [Child V.V.] in connection with any educational, hospitalization and/or institutionalized activity."

Provision 13, Article 2 of the Settlement Agreement provides:

"The parents shall cooperate, with respect to [Child V.V.], so as to advance [Child V.V.]'s health, emotional and physical well-being, and to give and afford [Child V.V.] the affection of both parents and a sense of security, to a maximum degree. Neither parent will, directly or indirectly, influence [Child V.V.] so as to prejudice [Child V.V.] against the other parent. Neither parent shall engage in any behavior that may alienate [Child V.V.] from the other parent, nor prejudice [Child V.V.] against the other parent. The parents will endeavor to guide [Child V.V.] so as to promote an affectionate relationship between [Child V.V.] and the Father and [Child V.V.] and the Mother. The parents shall exert every reasonable effort to foster and promote the feeling of affection between [Child V.V.] and the other parent and the other parent's family. Neither parent shall do anything which might estrange [Child V.V.] from the other parent nor shall either parent degrade the other parent or his or her family in [Child V.V.]'s eyes or which might hamper the free and natural development of [Child V.V.]'s love, affection, and respect for the other parent or his or her family."

Provision 3, Article 18 of the Settlement Agreement provides:

"Binding Effect. This Agreement and all the obligations and covenants hereunder shall be forever binding and conclusive upon, and shall inure to the benefit of, the parties hereto and their respective estates, heirs, next of kin, successors, executors, administrators, legal representatives and assigns."

Provision 4, Article 18 of the Settlement Agreement provides:

"Modification and Waiver. Neither this Agreement nor any provision hereof shall be amended, waived or modified or deemed amended, waived or modified except by an agreement, in writing, identifying each particular provision amended, waived or modified, and duly subscribed and acknowledged by both parties with the same formality as this Agreement. No oral representation shall constitute an amendment, waiver or modification even if substantially and detrimentally relied upon. Except by reason of a party's financial misrepresentation and/or fraud, to the extent that any law permits a party to make an application for a modification of this Agreement, or to make an application to set aside this Agreement, each party expressly waives such right."

65.     The Foote School also has a copy of said Foreign Matrimonial Judgment and its incorporated, *but not merged into*, Settlement Agreement provided by Plaintiff during the "kindergarten parent interview" appointment on January 11, 2018 with the Director and Associate Director of Admissions at the Foote School.

66.     Contradicting to the allegation and false report to the New Haven Police made by Head of School, Carol Maoz, in denying Plaintiff's equal access to its facility at the Foote School on September 4, 2019, (see *ante*, ¶¶ 58-59) nowhere in the 2019-2020 Foote School Parent Handbook or the charter, bylaws, or other governing instrument of the Foote School Association Incorporated provides any rule or policy to deny access to the programs and facilities on the basis of race, sex, national origin, ancestry, disability, record of disability, and/or being regarded as "mentally ill," especially during the pick-up hours after the dismissal time of the day of school for a parent to pick up his or her child.

67.     Indeed, the Foote School's policy expressly prohibited "harassment or intimidation because of race, color, national origin, ancestry, sex, religious creed, age, physical disability, including but not limited to blindness, present or past history of mental disorder, mental retardation, learning disability, marital status, or sexual orientation, or retaliation for having opposed or complained of conduct believed to be discriminatory, which is likewise illegal." Appendix B Policy Prohibiting Sexual Harassment, the 2019-2020 Foote School Parent Handbook, p. 3.

68.     Not only Defendants' conducts on the second day of school conspired with E.V., for the purpose of depriving Plaintiff of joint legal custody of Child V.V. and equal protection of the laws and equal privileges and immunities guaranteed under Art. XXI of Amendments to the Constitution of the State of Connecticut and the Fourteenth Amendment of the United States Constitution; Defendants' discriminatory conducts also caused substantial impairment to

Plaintiff's contractual obligations with respect to the care, custody and decision-making rights and responsibilities concerning the Child that bind the parents under an independently survived Settlement Agreement.

69.     Defendants' intentional discriminatory acts contravened the Foote School's policy and breached the charter of the Corporation of the Foote School Association Incorporated. Defendants breached its agreement with Plaintiff by discriminating her on the basis of race, sex, national origin, ancestry, disability, record of disability, and/or because the defendants regarded Plaintiff Mother as "mentally ill." Defendants, under color of law, further impaired Plaintiff's equal rights under the law to enforce the contracts of the Settlement Agreement with E.V. and the charter of the Corporation with Defendants, respectively, and deprived Plaintiff of rights and privilege provided by the above-mentioned contracts and agreements and protected under the federal and state law and constitutions.

70.     Shortly after the incidence on September 4, 2019, (see *ante*, ¶¶ 58-59) Plaintiff Mother made several requests to assert her rights in good faith under the charter of the Corporation and the 2019-2020 Foote School Parent Handbook to the Foote School Administration, including Carol Maoz and Chrissy Khachane, that the Foote School shall permit Plaintiff's equal access to its facility in a non-discriminatory manner and shall notify Plaintiff regarding Child V.V. who enrolled at the Foote School in accord with the School Communications Policy; Parent-Teacher Conference, Reports and Grading Policy; and Parent Notification policies concerning Field Trips, Child Abuse Reporting, and Health.

71.     Plaintiff Mother also made numerous requests for the Foote School administration to provide accommodation, intervention, and remedy for denying Child V.V. the equal educational opportunity at the Foote School, including but not limited to, Chinese Delegation Assembly on

Oct 2, 2019; Grandparents Day on Oct. 11, 2019; Fall Family Fun Day on Sept. 15, 2019; All School Assembly on Dec. 20, 2019; and Foote's Parent Affinity Group's events of family of color, on the basis of race, sex, national origin, ancestry, disability, record of disability, and/or because the defendants regarded Plaintiff Mother as "mentally ill."

72.     On or about September 24, 2019, the Foote School announced that the School was in search for a new Head of School in replacing Carol Maoz.

73.     After numerous attempts by Plaintiff Mother to schedule a meeting with the Foote School administration in good faith, on January 14, 2020, however, the Assistant to the Head of School, Silvia Gee, told Plaintiff in an email that Carol Maoz refused to meet with Plaintiff and refusing to provide accommodations or relief to Plaintiff and/or Child V.V.

74.     In contrast to the Foote School Administration's non-responsiveness to these requests made by Plaintiff after the second day of school upon the enrollment of Child V.V. at the Foote School, the Foote School Admissions Office initiated frequent communications and parent-interviews with Plaintiff between April 2017 and August 2019 during Plaintiff's application for Child V.V. to attend the Kindergarten program at the Foote School prior to Child V.V.'s enrollment. Defendants the Foote School, Carol Maoz, and Chrissy Khachane, unreasonably failed to provide Plaintiff's access to its facility, failed to provide equal educational opportunity to Child V.V., and repudiated all duties under the membership association contract between Plaintiff Mother and the Foote School Association upon the enrollment of Child V.V. at the Foote School, as well as under the agreement of the 2019-2020 Foote School Parent Handbook between Plaintiff and the Foote School.

75.     Instead of providing Plaintiff access to its facility or parent notification, the Foote School met Plaintiff's requests with retaliation in return by unlawfully refusing to release reports

and attendance records concerning Child V.V. to Plaintiff and by deleting Plaintiff's online Parent Portal account on the Foote School website through which Plaintiff used to apply to the Foote School for two consecutive years in a row between 2017 and 2019 in submitting application essays, forms, recommendations from Child V.V.'s prior schools.

76.    Plaintiff was deeply disheartened for the Foote School's deceitful, malicious, and intentional discrimination, harassment, and retaliation.

77.    During the COVID-19, the Foote School campus was closed. For the second half of the spring semester of 2020, the Foote School transitioned its educational program or activity to online distance learning. At that time, Child V.V. was enrolled in the Kindergarten program. During the transition, the teachers at the Foote School worked closely with the parents on scheduling of classes and providing students online resources by emailing the parents.

78.    Plaintiff Mother made numerous requests to the Foote School Administration that the Foote School teachers shall provide Plaintiff the equal access to the learning resources for Child V.V. and provide Child V.V. the equal educational opportunity. However, the Foote School unreasonably denied Plaintiff such access and accommodation. Nor did the Foote School teachers of Child V.V.'s class respond to Plaintiff's requests.

79.    In the fall semester of 2020, the Foote School transitioned back to a hybrid of online distance and in-person learning. Child V.V. continued to enroll at the Foote School in a class of Grade One.

80.    On October 13, 2020, the new Head of School, Aléwa Cooper, of the Foote School replacing Carol Maoz, agreed to meet with Plaintiff via a video conference joined by the Head of Lower School, Chrissy Khachane. This was the first meeting the Foote School arranged for Plaintiff to meet with the Foote School Administration since the last parent-interview held on

November 16, 2018 during Plaintiff's application to the Foote School for Child V.V. to enroll in its Kindergarten program. During the October 13, 2020 virtual meeting, Plaintiff Mother discussed with the Foote School Administration about providing Plaintiff the equal access to online learning resources in providing equal educational opportunity to Child V.V., explaining that Plaintiff was not "mentally ill" or of any abnormal mental condition that affected Plaintiff's ability to parent, and expressed Plaintiff's concerns that Child V.V. was subject to E.V.'s maltreatment and child sexual abuse during Child V.V.'s education program or activity offered online by the Foote School— "from the comfort of [the Child's] daddy's lap" (quoting the 2020-2021 LS-Fall Term Report Card of Child V.V., p.3.)

81.     However, rather than take appropriate procedures on "the suspected child abuse" as provided in the Foote School's Policy on Mandated Reporting of Child Abuse, or take some other action to deter E.V. from behaving in such an inappropriate manner during Child V.V.'s educational program or activity at the Foote School "in the remote setting at home." *Supra*, p.11, the Head of School, continued to deny Plaintiff Mother's equal access to the Foote School, equal educational opportunity of Child V.V., and interfere with Plaintiff's joint legal custody, alleging "E.V. is the only parent that signed Child V.V.'s enrollment contract, so as a school, he is our client" contravening the charter of the Corporation and the Foote School's rule and policy provided in its Foote School Parent Handbook, which expressly provides, in relevant part:

> "any parents or guardians of the person of a child enrolled and in attendance at the school managed or operated by the association shall be members of the association. Membership in the association shall terminate when a member ceases to have a child enrolled in and attending said school, provided that any member who is serving as director of the association when he or she ceases to have a child enrolled in the school shall continue to be a member until the expiration of his or her term as director."

82.     In the email from the Head of School, Aléwa Cooper, dated October 19, 2020 to Plaintiff, the Foote School Administration showed its deliberate indifference to discrimination and

sexual harassment and intentional custodial interference with Plaintiff's joint legal custody and joint decision-making responsibilities concerning Child V.V., stating the following:

> "As we discussed during our meeting on Tuesday [Oct. 13, 2020], I followed up with the school attorney about this situation. Our attorney confirmed that it is not for the school to determine the [Foreign Matrimonial Judgment and Settlement Agreement]'s validity or how to apply them to this situation. You will have to contact E.V. and his attorney about how you manage joint legal custody. … Therefore, we are not at liberty to provide you with any information about Child V.V. or our program beyond what is found on our website. … Please note that the letter dated September 4, 2019, from Carol Maoz, informing you that you may not come to campus, remains in effect."

83.     In the spring semester of 2021, Plaintiff Mother sent the Foote School Administration letters and documents expressing her concerns over Child V.V. continuing to be subject to "the comfort of [the Child's] daddy's lap" during the educational program or activity "in the remote setting at home" offered by the Foote School along with the sworn testimonies and affidavits of E.V. acknowledging such abusive, inappropriate conducts to Child V.V. and photos evidencing E.V.'s inappropriate "touching, … and brushing against [Child V.V.'s] body" in violation of the Foote School's Policy Prohibiting Sexual Harassment.

84.     Nevertheless, the Foote School failed its duty as a mandatory reporter of child abused under Conn. Gen. Stat. § § 17a-101(b)(9); failed to comply with its Policy on Mandated Reporting of Child Abuse expressly stated in the 2019-2020 Foote School Parent Handbook, Appendix C, Pp. 4-7; failed to intervene to prevent further sexual harassment, contravening its zero tolerance policy of "harassment or intimidation because of race, color, national origin, ancestry, sex, religious creed, age, physical disability, including but not limited to blindness, present or past history of mental disorder, mental retardation, learning disability, marital status, or sexual orientation, or retaliation for having opposed or complained of conduct believed to be discriminatory, which is likewise illegal." Appendix B Policy Prohibiting Sexual Harassment, the 2019-2020 Foote School Parent Handbook, p. 3.

85.     Again, the Foote School showed deliberate indifference to Plaintiff Mother's complaint against discrimination and harassment but responded with retaliation in return.

86.     On April 23, 2021, the Head of School emailed Plaintiff Mother with an office letter attached, stating in relevant part, "Please be advised that [Plaintiff] or any person acting as [Plaintiff's] proxy or on [Plaintiff's] behalf may not come to the Foote Campus. We request that [Plaintiff] kindly stop contacting the school in any matter, including in writing, electronically, or by telephone. [Plaintiff] will not receive a response to [Plaintiff's] communications. If [Plaintiff] continue to call or send emails to the school, [the Foote School] will contact the New Haven Police."

87.     In asserting Plaintiff's parental right of access to Child V.V.'s records provided under Conn. General Statutes § 10-15b and the Family Educational Rights and Privacy Act, ("FERPA") 20 U.S.C. § 1232g, Plaintiff, though counsel, served the Foote School on July 20, 2021 with a subpoena issued by a Commissioner for the Superior Court directing the production of school or student records of Child V.V. in connection with the proceedings in the Superior Court of New Haven.

88.     However, the Foote School failed to comply and continued to refuse to comply with the subpoena in violation of the FERPA and Conn. Gen. Stat. §§ 10-15b and 10-188.

89.     The Foote School led by its top leadership knowingly repudiated all duties of the agreement between the Foote School and Plaintiff, ratified and allowed the abusive and hostile educational environment to flourish, and intentionally engaged in its own acts of discriminatory and retaliatory conduct against Plaintiff and Child V.V. Indeed, the Foote School has been repeatedly provided notice of unlawful discrimination and harassment suffered by Plaintiff and her Child.

90.     As a direct result of the Foote School's concerted and intentional discrimination, in concert with Carol Maoz, David Sklar, Chrissy Khachane, and Aléwa Cooper, Plaintiff was overpowered, burdened with inconvenience, humiliation, and embarrassment, and suffered from loss of parental concern for the education and upbringing of her child. Failed to admit and remedy the harm caused by the despicable discriminatory and retaliatory acts committed by its personnel at the top leadership, the Foote School again knowingly violated federal and state laws and constitutions by denying Plaintiff's accommodation, rights, benefits, and privileges that was enjoyed by similarly situated parents, by threatening Plaintiff from "contacting the school in any matter, including in writing, electronically, or by telephone;" by threatening Plaintiff "if [Plaintiff] continue to call or send emails to the school, the Foote School will contact the New Haven Police;" and by falsely educating and intimidating Child V.V. that "Plaintiff was not safe to be with her child on campus at the Foote School." Both Plaintiff and Child V.V. have been deeply devastated and humiliated by Defendants' unlawful, harassing, and retaliatory conducts.

91.     Thus, not only did the Foote School disregard the countless complaints lodged against its discriminatory and retaliatory act by Plaintiff, but likely knowing that the top leadership at the Foote School would not suffer any meaningful consequences for their harassing behavior from the private School internally, decided to actively retaliate Plaintiff for asserting her rights as a parent and a member in the Foote School Association, as if Plaintiff's right as a parent of a child who enrolled at the Foote School was all a delusional joke.

92.     On January 25, 2022, the Head of Lower School, Chrissy Khachane, told Plaintiff Mother over the phone, alleging that "[Foote School] still have the same policy in place ... that [Plaintiff] was not permitted on campus. It is still standing,"... "legally, while [Plaintiff's Child] is on campus, [the Child] is [Foote School's] property." Chrissy Khachane added that the Foote

School had convinced Child V.V. that to make sure Child V.V. is safe at school, the Foote School

policy is that Plaintiff was not allowed to be on campus at the Foote School while Child V.V. was

there.

93.     Despite of repeated requests by Plaintiff to Defendants for Plaintiff to be equally

notified regarding Child V.V. at the Foote School, the Head of School, Aléwa Cooper, sent an

email to E.V. without sending it to Plaintiff, under the subject of "[Child V.V.]" attacking Plaintiff,

fraudulently stating "[t]o be clear, [Plaintiff] is not permitted on the Foote campus, and [Plaintiff's]

presence on campus and the challenges [Plaintiff] is creating for the School employees put [Child

V.V.'s] enrollment at Foote in jeopardy. Since [Child V.V.] began at the Foote School, [E.V.] has

been a good **partner** with the Foote School. ... [E.V.] and any other adult associated with the

School by virtue of a relationship with [Child V.V.] must maintain a positive and constructive

working relationship with the School. Again, [Plaintiff] was not supposed to be on campus, was

dishonest about why [Plaintiff] was there and reached out to take [Child V.V.] with her." (emphasis

added.)

94.     The Foote School further fraudulently or maliciously alleged that the reason of

Child V.V. not feeling safe when Plaintiff was on campus was because any contact between

Plaintiff Mother and Child V.V. would put Child V.V.'s enrollment at the Foote School in jeopardy

due to Child V.V.'s mental health condition in violation of Conn. General Statutes § 17a-83.

95.     Pursuant to the 2019-2020 Foote School Parent Handbook,

"The Health Team consists of the Head of School, Head of Lower School, Head of Middle
School, Assistant Middle School Head, the School Nurse, the Consulting Child Psychiatrist,
the Consulting Pediatrician, and the School Counselor. Other faculty members attend
meetings periodically. This team meets regularly to review issues pertaining to the welfare
of members of the school community."

96.     The Head of School and Head of Lower School persistently conspired with the

Foote School employees to fraudulently or maliciously report that Plaintiff Mother and/or Child

V.V. was of some kind of bizarre "mental illness" that whenever there was contact between Plaintiff Mother and Child V.V., Child V.V.'s enrollment at the Foote School would be in jeopardy in denying Plaintiff Mother's equal rights under the law and Child V.V.'s equal educational opportunity.

97.     Additionally, the 2019-2020 Foote School Parent Handbook section on Health expressly provides, in relevant part:

> "If a student is diagnosed with a major illness or injury (including a concussion) that affects his/her school experience, division heads must be informed prior to returning to school, including any accommodations and restrictions documented by a physician. The Health Office must also be informed."

The subsection on Mental Health and Wellness expressly provides, in relevant part:

> "Foote School seeks to provide a positive learning environment that supports the social and emotional wellbeing of every member of the community. Classroom teachers, advisors, staff members and coaches interact with students in many different dimensions each day and over the course of the year to ensure that they are happy and comfortable. Even so, these can be challenging years for young people and in such cases it is vital that the school and family work together as soon as an issue arises. Mental health and emotional concerns may include, but are not limited to, stress and anxiety, depression, or thoughts of hurting oneself. In such cases, the school and the child's parents must be in touch with one another and should partner with outside professionals as needed. A commitment to open communications and working together are key aspects in helping students navigate such difficult and traumatic times. … In extreme cases in which a student has exhibited or verbalized thoughts of self-harm or even suicide, it is vital that the situation is treated with high concern and that community resources are enlisted immediately. In such situations, the student may not attend school until a mental health professional evaluates the student and affirms that he or she is fit to return."

98.     The 2020-2021 Foote School Tuition Refund Plan expressly provides the reimbursement policy for Students' withdrawal or absence for medical reasons, in relevant part:

> "The Plan will pay 75% of the unused yearly insured fees, provided the student's mental health condition, as referenced in DSM V, forces the student to withdraw from school or medical absence lasts for 31 or more consecutive days. Benefits are paid retroactive to the first day of medical absence."

99.     The Foote School irresponsibly, fraudulently alleged Child V.V. was of "mental illness." However, if Child V.V. was indeed of mental health condition, the Foote School has failed

to adequately address, care, or treat Child V.V. such alleged mental health condition, failed to accord "a commitment to open communications and working together [with the child's parents] are key aspects in helping students navigate such difficult and traumatic times" contravening to the Foote School policy and breaching the agreement between Plaintiff and the Foote School.

100.    Most shockingly, Defendants, instead of offering Child V.V. the proper care or treatment on such alleged mental health condition of Child V.V., the top leadership of the Foote School fraudulently alleging either Child V.V. or Plaintiff Mother or both were of "mental illness" for the sole purpose of discriminating, harassing, and retaliating Plaintiff and denying Child V.V. of equal educational opportunity, creating a fearful, hostile educational environment for Child V.V. that injured Child V.V.'s natural development of love, affection, and respect for Plaintiff Mother, without providing the proper remedy for its unlawful conducts.

101.    It is truly shameful that such shocking conduct could occur at and be condoned by what many regard to be a prestigious private institution such as the Foote School. Indeed, as confessed by the Business Manager/CFO of the Foote School, David Sklar, to the New Haven Police Officer Harpe (Badge No. 40801) on September 4, 2019, "it is sad."

102.    Defendants' repeated violations of the Foote School's rule and policy, wrongful conducts in violation of federal and state laws and constitutions, intentional interference with Plaintiff's care, control, and custody of Child V.V., and false education and intimidation of Child V.V. are clear indication that what is really going on inside the Foote School contradicts to its motto, "gladly will I learn and gladly teach," left no choice for Plaintiff but take this instant action.

## CAUSE OF ACTION

### FIRST CAUSE OF ACTION

**COUNT ONE:**      **DISCRIMINATION    AND    IMPAIRMENT    OF    EQUAL CONTRACTUAL RIGHTS UNDER THE LAW (42 U.S.C. §§ 1981 AND 1983)**

103.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs designated 1 through 102 with the same force and effect as if fully set forth at length herein.

104.    The 2019-2020 Foote School Parent Handbook on Admissions expressly provides, in relevant part:

> "The Foote School is committed to providing an inclusive and welcoming environment for all members of our community. The Foote School is a community that affirms diversity. It does not discriminate on the basis of race, color, ethnicity, national origin, religion, sex, sexual orientation, gender identity and expression, age, disability, marital status, and any other status protected by law. This statement applies, to, but is not limited to, employment, administration of educational policies, admissions, financial aid, and other school administered programs. The Foote School adheres to the Principles of Good Practice; set forth by the National Association of Independent Schools."

Item 7 of the Principle of Good Practices provides:

> "The school clearly communicates those policies and procedures of the school, member associations, and/or athletic leagues that may affect a family's decision to enroll." Available online at https://www.nais.org/getmedia/1f1b13e4-307d-4ffe-bbcf-972942dd26d8/NAIS_PGP_Admissions.pdf (all internet materials as last visited August 29, 2022.)

105.    The charter of the Foote School Association Incorporated (hereinafter "Charter"), expressly provides, in relevant part:

> "any parents or guardians of the person of a child enrolled and in attendance at the school managed or operated by the association shall be members of the association. Membership in the association shall terminate when a member ceases to have a child enrolled in and attending said school, provided that any member who is serving as director of the association when he or she ceases to have a child enrolled in the school shall continue to be a member until the expiration of his or her term as director." *See* Exhibit "A", p. 46.

106.    The Foote School annually certified, under penalty of perjury, compliance with the charter of the Foote School Association Incorporated, expressly which provides, in relevant part:

> "Prior to filing, the Form 990 is reviewed and approved by the audit committee then the executive committee. The approved Form 990 is then made available to all board members prior to filing." *See* Exhibit "A", p. 48.

107.    The 2019-2020 Foote School Parent Handbook section on Foote School Association and Board of Directors expressly provides, in relevant part:

> "All parents and guardians of Foote School students are members of the Foote School Association. Although not FSA members, faculty are frequently asked to serve on FSA committees. The Foote School Board of Directors is charged with establishing basic policies for the school in partnership with the Head of School. The Board consists of up to 22 members elected for four-year terms. Each year, new directors are elected by the parent body at the FSA/PTC meeting held annually in May."

The 2019-2020 Foote School Parent Handbook section on Parent Teacher Council expressly provides, in relevant part:

> "The Parent Teacher Council (PTC) is a link between Foote School and its families. All parents and guardians of Foote students are members of the PTC. The PTC is a great way to become actively involved in your child's school. The goals of the PTC are to provide opportunities to build and strengthen community, to enhance the educational experience with the proceeds from fundraising events and activities, and to facilitate communication among parents, faculty and administrators. Monthly meetings are held during the school year. Community-building activities include Fall Family Fun Day, the Fall Dinner, a book swap, faculty appreciation breakfast, and vision and hearing screenings. Fundraising activities pay for educational enhancements such as field trips, emergency scholarships, special assemblies, and books for summer reading. Sale of Foote school merchandise, a book fair, and an annual auction/social event are examples of PTC fundraising activities. Parent and teacher participation in PTC-sponsored events is encouraged and appreciated. Information about upcoming events and activities may be found posted on the PTC bulletin board located in the hallway directly around the corner from the Front Desk or on the Foote website at www.footeschool.org. Those interested in volunteering should speak to a member of the PTC Executive Board or attend any PTC meeting. For a list of current PTC Executive Board members and committee chairpersons, see the Foote School Directory or the school website."

108.    The Handbook and Charter constitutes an agreement between the Foote School and Plaintiff.

109.    The Foote School breached its agreement by denying Plaintiff full access to its facilities and programs and place of public accommodation, denying Plaintiff's rights, privileges, and benefits entitled to a member in the Foote School Association, and denying Child V.V.'s full and equal educational opportunity on the basis of race, sex, national origin, ancestry, disability,

record of disability, and/or because the defendants perceived Plaintiff Mother and/or her Child as "mentally ill," in violation of 42 U.S.C. §§ 1981 and 1983.

110.    Additionally, the parents' Settlement Agreement on Child Custody, incorporated, *but not merged into*, the parents' Foreign Matrimonial Judgment, certified and registered in the Superior Court of New Haven in the State of Connecticut on May 7, 2019, expressly provides, (see *ante*, ¶¶ 62-65) in relevant part, Provision 7 of Article 2 of the Settlement Agreement:

> "Each party shall be entitled to complete detailed information regarding [Child V.V.] from any physician, psychologist, dentist, or other health professional involved in the treatment of [Child V.V.] and any educator or institution attended by [Child V.V.] Each party has the right to receive copies of any reports rendered by any such health care or educational professionals or institutions (including periodic report cards), as well as a summary of any information received via oral communication."

Provision 7, Article 2 of the Settlement Agreement provides:

> "Each party has the right to attend all school functions (including PTA), camp, after-school programs (special events), extra-curricular activities, graduations and other special events, and shall keep the other parent informed of any such events, should they not be reflected on the school calendar."

Provision 12, Article 2 of the Settlement Agreement provides:

> "Both parents shall be listed as the parents of [Child V.V.] in connection to any application, registration or filing, which may be filed by or on behalf of [Child V.V.] in connection with any educational, hospitalization and/or institutionalized activity."

Provision 13, Article 2 of the Settlement Agreement provides:

> "The parents shall cooperate, with respect to [Child V.V.], so as to advance [Child V.V.]'s health, emotional and physical well-being, and to give and afford [Child V.V.] the affection of both parents and a sense of security, to a maximum degree. Neither parent will, directly or indirectly, influence [Child V.V.] so as to prejudice [Child V.V.] against the other parent. Neither parent shall engage in any behavior that may alienate [Child V.V.] from the other parent, nor prejudice [Child V.V.] against the other parent. The parents will endeavor to guide [Child V.V.] so as to promote an affectionate relationship between [Child V.V.] and the Father and [Child V.V.] and the Mother. The parents shall exert every reasonable effort to foster and promote the feeling of affection between [Child V.V.] and the other parent and the other parent's family. Neither parent shall do anything which might estrange [Child V.V.] from the other parent nor shall either parent degrade the other parent or his or her family in [Child V.V.]'s eyes or which might hamper the free and natural development of [Child V.V.]'s love, affection, and respect for the other parent or his or her family."

111.    Defendants' unlawful practices, acts and omissions caused and will continue to cause substantial impairment and deprivation of Plaintiff's contractual and constitutional rights and obligations in making decisions concerning the care, custody, and control of her minor child V.V. and Plaintiff's equal right in the State of Connecticut "to make and enforce contracts, … and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens," in violation of 42 U.S.C. §§ 1981 and 1983.

112.    As a result of the Foote School's breach, Plaintiff has and will continue to suffer damages.

113.    Plaintiff also seeks punitive damages against Defendants because of Defendants' willful and/or reckless disregard for Plaintiff's and/or Child V.V.'s civil rights, in an amount to be determined at trial but no less than Five Hundred Thousand ($500,000.00).

## SECOND CAUSE OF ACTION
**COUNT TWO:**     **FAILURE TO PREVENT A CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS (42 U.S.C. § 1986)**

114.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs designated 1 through 102 with the same force and effect as if fully set forth at length herein.

115.    "[A] § 1986 plaintiff must show that: (1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed." *Clark v. Clabaugh*, 20 F.3d 1290, 1295-96 (3d Cir. 1994).

116.    Defendant was aware of the equal rights and responsibilities between Plaintiff and E.V. concerning Child V.V. and the Settlement Agreement provides each parent of Child V.V. the equal right to attend all school functions and to be entitled to complete detailed information

regarding Child V.V. from any educator or institution attended by the Child V.V. See *ante*, ¶ 110; ¶¶ 62-65. However, Defendants stated in an email to Plaintiff, dated October 19, 2020, in relevant part, that [the Foote School's] attorney confirmed that it is not for the school to determine the [Foreign Matrimonial Judgment and Settlement Agreement]'s validity or how to apply them to this situation." *See ante*, ¶ 82.

117.    Defendants were also aware that Plaintiff is not "mentally ill" or of any abnormal mental condition that affected Plaintiff's ability to parent. In fact, Defendants repeatedly contacted, consulted, and interviewed Plaintiff between April 2017 and August 2019, prior to Child V.V.'s enrollment during the application and registration process in deciding to offer Child V.V.'s admission to the Foote School. Nevertheless, Defendants intentionally conspired with E.V., for the purpose of depriving, either directly or indirectly, Plaintiff of joint legal custody concerning Child V.V., equal protection of the laws, and/or of equal privileges and immunities under the laws, by alleging Plaintiff as "mentally ill", "ridiculous," "Chinese,"…"[Plaintiff's] parents don't speak any English," … and Plaintiff coming to the Foote School picking up her child "is creating a scene"…"creating a problem" ... "for students and her own daughter;" … "Because [Plaintiff] is mentally ill, the likelihood of her showing up again to pick up her daughter [at the Foote School] is pretty high;" (*see ante*, ¶¶ 58-59) and further alleging E.V. is "a good partner with the Foote School," (*see ante*, ¶ 92) contravening the rule and policy of the School provided in the 2019-2020 Foote School Parent Handbook and the charter of the Foote School Association Incorporated.

118.    Failed to provide Plaintiff's access to its facility, failed to provide equal educational opportunity to Child V.V., and repudiated all duties under membership association contract between a parent and the Foote School Association upon the enrollment of Child V.V. at the Foote

School and under the agreement of the 2019-2020 Foote School Parent Handbook between the Foote School and Plaintiff, Defendant neglected or refused to prevent a § 1985 conspiracy.

119.    Plaintiff was discriminated, harassed, and retaliated by Defendants. Plaintiff and Child V.V. were subjected by Defendants to segregation and discrimination in the exercise or enjoyment of their civil rights on the basis of disability, record of disability, and/or because Defendants regarded Plaintiff Mother and/or her Child as "mental ill" in violation of the ADA as amended, 42 U.S.C. § 12101 *et seq.*; Section 504, Rehabilitation Act of 1973 as amended, 29 U.S.C. § 794, and Art. XXI of Amendments to the Constitution of the State of Connecticut.

120.    Defendants discriminated and harassed on the basis of sex, and retaliated Plaintiff and/or Child V.V. for making complaints about discrimination and sexual harassment in violation of Title IX of the Education Amendments of 1972 as amended, 20 U.S.C. § 1681 *et seq.*; Equal Educational Opportunities Act of 1974, 20 U.S.C. § 1701 *et seq.*; and Art. XXI of Amendments to the Constitution of the State of Connecticut.

121.    Defendants violated Title VI of Civil Rights Act as amended, 42 U.S.C. § 2000d *et seq.*; Equal Educational Opportunities Act of 1974, 20 U.S.C. § 1701 *et seq.* and Art. XXI of Amendments to the Constitution of the State of Connecticut by denying Plaintiff the equal protection of the law and by subjecting Plaintiff and/or Child V.V. to segregation and discrimination in the exercise or enjoyment of her/their civil rights because of race, ancestry and national origin.

122.    The Foote School led by its top leadership knowingly repudiated all duties of the agreement between the Foote School and Plaintiff, ratified and allowed the abusive and hostile educational environment to flourish, and intentionally engaged in its own acts of discriminatory and retaliatory conduct against Plaintiff and/or Child V.V. in violation of 42 U.S.C. §§ 1981, 1983

and 1985. Such wrongful act could have been prevented by Defendants' reasonable diligence, in acting accord to the Foote School's charter, the Foote School Parent Handbook, and the above-mentioned federal and state laws and constitutions.

123.     As a direct and proximate result of the Foote School's wrongful act and neglect, Plaintiff has and will continue to suffer damages for which Plaintiff is entitled to an award to recover.

124.     Plaintiff also seeks punitive damages against Defendants because of Defendants' willful and/or reckless disregard for Plaintiff's and/or Child V.V.'s civil rights, in an amount to be determined at trial but no less than Five Hundred Thousand ($500,000.00).

**THIRD CAUSE OF ACTION**

**COUNT THREE:**     **CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS (42 U.S.C. § 1985(3))**

125.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs designated 1 through 102 with the same force and effect as if fully set forth at length herein.

126.     "A legally sufficient § 1985(3) complaint must aver a conspiracy between two or more persons intended to deprive any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the law and an act by one of the conspirators in furtherance of the conspiracy which injured another person or deprived him of exercising any right or privilege of a citizen of the United States. See *Griffin v. Breckenridge*, 403 U.S. 88, 102-103 (1971); *Cameron v. Brock*, 473 F.2d 608, 610 (6 Cir. 1973)." *Girard v. 94th St. Fifth Ave. Corp.*, 530 F.2d 66, 70 (2d Cir. 1976).

127.     By the above-described conduct, Defendants, led by its top leadership, in concert with E.V., intended to deprive Plaintiff of the equal protection of the laws or of equal privileges

and immunities under the law, including but not limited to, the (1) agreement between the Foote

School and Plaintiff, (2) Settlement Agreement between Plaintiff and E.V., (3) ADA as amended,

42 U.S.C. § 12101 *et seq.*, (4) Section 504, Rehabilitation Act of 1973 as amended, 29 U.S.C. §

794, (5) Art. XXI of Amendments to the Constitution of the State of Connecticut, (6) Title VI of

Civil Rights Act as amended, 42 U.S.C. § 2000d *et seq.*, (7) Title IX of the Education Amendments

of 1972 as amended, 20 U.S.C. § 1681 *et seq.*, (8) Equal Educational Opportunities Act of 1974,

20 U.S.C. § 1701 *et seq.*, and (9) Fourteenth Amendment of the United States Constitution, on the

basis of race, sex, national origin, ancestry, disability, record of disability, and/or because the

defendants regarded Plaintiff Mother and/or her minor child as disabled.

128.    Defendants' intentional discriminatory and retaliatory act, in concert with the Foote

School's employees and E.V., in furtherance of the conspiracy which injured Plaintiff and/or Child

V.V. and deprived Plaintiff and/or Child V.V. of exercising the right or privilege of a citizen of

the United States protected in the above-mentioned laws.

129.    As a direct and proximate result of the Foote School's unlawful and discriminatory

act, Plaintiff and/or Child V.V. has/have and will continue to suffer damages for which Plaintiff is

entitled to an award to recover.

130.    Plaintiff also seeks punitive damages against Defendants because of Defendants'

willful and/or reckless disregard for Plaintiff's and/or Child V.V.'s civil rights, in an amount to be

determined at trial but no less than Five Hundred Thousand ($500,000.00).

**FOURTH CAUSE OF ACTION**

**COUNT FOUR:**      **DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH
                    DISABILITIES ACT**

131.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs designated 1 through 102 with the same force and effect as if fully set forth at length herein.

132.    Eight years after the U.S. Supreme Court's decision in *Pennhurst State School and Hospital v. Halderman*, 451 U. S. 1 (1981), Congress enacted several laws designed to improve the way in which this Nation treats the mentally disabled. In enacting the ADA, Congress spoke with a clear voice that "the term 'disability' means, with respect to an individual, (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102 (1).

133.    "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182 (a).

134.    "It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182 (b)(1)(E).

135.    Plaintiff Mother and/or Child V.V. is individual with disability within the meaning of 42 U.S.C. § 12102(1)(C), and/or individual is known to have a relationship or association with the known disability of an individual under 42 U.S.C. § 12182 (b)(1)(E).

136.    The Foote School is a place of public accommodation within the meaning of 42 U.S.C. § 12181(7).

137.   The Head of School, the Head of Lower School, and the Business Manager/CFO of the Foote School are the persons who own, lease (or lease to), or operate a place of public accommodation of the Foote School.

138.   At all relevant times, Defendants were aware of the ADA relating to accessibility for individuals with disabilities.

139.   Defendants have engaged and continue to engage in prohibited misconduct against Plaintiff and/or Child V.V., within the meaning of 42 U.S.C. §§ 12182 (b) (2) (A) (i)-(v), that did in fact deprive Plaintiff and/or Child V.V. of her/their rights guaranteed against private impairment, including, but not limited to, the right to fully and equally enjoy Defendants' place of public accommodation at 50 Loomis Place, New Haven, CT, 06511, which is guaranteed to Plaintiff and/or Child V.V. by the ADA. See 42 U.S.C. § 12101 *et seq*.

140.   Defendants' conscious objective have been to purposely impair Plaintiff's lawfully protected rights to accessibility within Defendants' place of public accommodation at 50 Loomis Place, New Haven, CT, 06511 by purposely, fraudulently alleging Plaintiff and/or Child V.V. were "mentally ill" (*see ante*, ¶58) … "[Foote School] still have the same policy in place … that [Plaintiff] was not permitted on campus. It is still standing,"… "legally, while [Plaintiff's Child] is on campus, [the Child] is [Foote School's] property," (*see ante*, ¶92) with the intention of creating an inaccessible public accommodation, for the purpose of depriving Plaintiff's and/or Child V.V.'s equal rights under law.

141.   Defendants purposefully ignored all prospective ADA violations and did not correct this impediment at 50 Loomis Place, New Haven, CT, 06511 to comply with the ADA on September 4, 2019 and thereafter.

142.    Defendants continue to operate 50 Loomis Place, New Haven, CT, 06511, their premises, in an inaccessible manner for such individuals as Plaintiff and/or Child V.V.

143.    The intentional conduct alleged herein against a class of people with disabilities who has (A) a mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment, see 42 U.S.C. § 12102 (1), were in furtherance to purposely control, operate, and maintain their premises in a manner that injured Plaintiff's and/or Child V.V.'s person and deprived Plaintiff and/or Child V.V. of equal rights and privileges of a citizen of the United States including, but not limited to, the right to fully and equally use Defendants' place of public accommodation at 50 Loomis Place, New Haven, CT, 06511 in the same manner as non-disabled peers.

144.    As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff and/or Child V.V. was/were injured and continue to endure inconvenience, humiliation, embarrassment, undue burden or expense, and other economic damages and non-economic damages, due Defendants' failure which caused Plaintiff's and/or Child V.V.'s injuries.

145.    Plaintiff is entitled to all legal and equitable remedies available for violations of the ADA, including compensatory damages, attorneys' fees and costs and other appropriate relief.

146.    Plaintiff also seeks punitive damages against Defendants because of Defendants' willful and/or reckless disregard for Plaintiff's and/or Child V.V.'s civil rights, in an amount to be determined at trial but no less than Five Hundred Thousand ($500,000.00).

## FIFTH CAUSE OF ACTION
COUNT FIVE:      **RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

147.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs designated 1 through 102 with the same force and effect as if fully set forth at length herein.

148.    To establish a prima facie case of retaliation, "the elements of a retaliation claim under either Section 504 or the ADA are (i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Board of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002)(citation omitted.)

149.    A request for reasonable accommodation is an ADA-protected activity. *Id.*, at 149. Plaintiff receives protection even if she was not entitled to the reasonable accommodation, as long as she made her request in good faith. *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000).

150.    Plaintiff requested for reasonable accommodation of disability regarded by Defendants in or around September 2019, including, but not limited to, fully and equally use Defendants' place of public accommodation at 50 Loomis Place, New Haven, CT, 06511 in the same manner as non-disabled peers; and equal educational opportunity for Child V.V. in the program or activity at the Foote School.

151.    One of the accommodations Plaintiff requested were enjoyed by her similarly situated parents.

152.    Indeed, the Foote School's policy expressly prohibited "harassment or intimidation because of race, color, national origin, ancestry, sex, religious creed, age, physical disability, including but not limited to blindness, present or past history of mental disorder, mental retardation,

learning disability, marital status, or sexual orientation, or retaliation for having opposed or complained of conduct believed to be discriminatory, which is likewise illegal." Appendix B: Policy on Prohibiting Sexual Harassment of the 2019-2020 Foote School Parent Handbook, p. 3.

153.    Nevertheless, Defendants ignored and denied Plaintiff's requested for reasonable accommodation of disability regarded by Defendants and in return retaliated Plaintiff for making such request by (1) unlawfully refusing to release reports and attendance records concerning Child V.V. to Plaintiff on or about September 4, 2019 and thereafter; (see *ante*, ¶¶ 58-59) (2) deleting Plaintiff's online Parent Portal account on the Foote School website on or about January 1, 2020; (see *ante*, ¶ 75) (3) threatening Plaintiff, on April 23, 2021, or any person acting as [Plaintiff's] proxy or on [Plaintiff's] behalf stop coming to the Foote Campus, Plaintiff stop contacting the Foote school in any matter, including in writing, electronically, or by telephone, otherwise [the Foote School] will contact the New Haven Police; (see *ante*, ¶ 86) and (4) failing to and refusing to comply with a subpoena issued by a Commissioner for the Superior Court, served upon the Foote School on July 20, 2021, directing the production of school or student records of Child V.V. in connection with the proceedings in the Superior Court of New Haven. See *ante*, ¶¶ 87-88.

154.    By failing to comply with the ADA but in return retaliating Plaintiff for making a request for reasonable accommodation, Defendants have articulated to disabled persons such as Plaintiff and/or Child V.V. that they are subject to injury as a participant at 50 Loomis Place, New Haven, CT, 06511 Defendants' place of public accommodation.

155.    Defendants violated the Americans with Disabilities Act as amended by denying her and her Child the accommodation enjoyed by similarly-situated peers, by threatening her from contacting and subpoenaing the Foote School, and by deleting Plaintiff's online Parent Portal

account on the Foote School's website. The retaliatory act was by decisions, preferences and conduct of Defendants.

156.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the Americans with Disabilities Act as amended, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, loss of rights, benefits, privileges for which she is entitled to as a member of the Foote School Association.

157.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the Americans with Disabilities Act as amended, Plaintiff and Child V.V. has suffered, and continues to suffer inconvenience, humiliation, embarrassment, and undue burden, for which they are entitled to an award of damages.

158.     The Foote School's unlawful and retaliatory actions constitute malicious, willful and wanton violations of the Americans with Disabilities Act as amended, for which Plaintiff is entitled to an award of punitive damages.

159.     Plaintiff also seeks punitive damages against Defendants because of Defendants' willful and/or reckless disregard for Plaintiff's and/or Child V.V.'s civil rights, in an amount to be determined at trial but no less than Five Hundred Thousand ($500,000.00).

<strong>SIXTH CAUSE OF ACTION</strong>

**COUNT SIX:**        **DISCRIMINATION IN VIOLATION OF TITLE VI OF CIVIL RIGHTS ACT**

160.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs designated 1 through 102 with the same force and effect as if fully set forth at length herein.

161.     "In order to establish a claim based on [Title VI of the Civil Rights Act of 1964] , the plaintiff must show, inter alia, that the defendant discriminated against him on the basis of race,

see, e.g., *Guardians Association v. Civil Service Commission*, 463 U.S. 582, 602-03, 607 n. 27 (1983); *General Building Contractors Association, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982), that that discrimination was intentional, see, e.g., *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977), and that the discrimination was a 'substantial' or 'motivating factor' for the defendant's actions, *Gierlinger v. Gleason*, 160 F.3d 858, 868 (2d Cir. 1998) (quoting *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977))." *Tolbert v. Queens College*, 242 F.3d 58, 70 (2d Cir. 2001).

162.     Plaintiff was born in the People's Republic of China and Asian-American.

163.     Plaintiff was discriminated that Defendants denied Plaintiff's equal access to the Foote School's campus on September 4, 2019 (see ante, ¶¶ 58-59) and thereafter—the rights and privileges enjoyed by a male Caucasian counterpart, E.V., with whom Plaintiff shares joint legal custody and joint legal custody of, and joint decision-making rights and responsibilities concerning Child V.V.

164.     Plaintiff was discriminated that Defendant denied Child V.V.'s equal educational opportunity the Foote School offered to its parent members in the Foote School Association and its students of majority, including, but not limited to, Chinese Delegation Assembly, mother-daughter program and activity, Grandparents Day, and Fall Family Fun Day that "parents are invited to attend" in accord with the 2019-2020 Foote School Parent Handbook.

165.     While Plaintiff was falsely regarded by Defendants as "mentally ill" contrary to facts, evidence, and law, immediately after Plaintiff completed Child V.V.'s application, enrollment, and registration in the Foote School's Kindergarten program, Defendants intentionally, maliciously stalked and harassed Plaintiff, alleging, *inter alia*, Plaintiff was "Chinese,"…"[Plaintiff's] parents don't speak any English" … and Plaintiff coming to the Foote

School picking up her child "is creating a scene"…"creating a problem" ... "for students and her own daughter" on the second day of school since Child V.V.'s enrollment at the Foote School.

166.    Defendants violated Title VI of the Civil Rights Act of 1964 by repudiating all duties, terms, and conditions of the membership contract between Plaintiff and the Foote School Association, by breaching the agreement between the Foote School and Plaintiff under the 2019-2020 Foote School Parent Handbook, by subjecting Plaintiff and/or her Child to segregation and discrimination in the exercise or enjoyment of her/their civil rights on the basis of race.

167.    Defendants also violated Title VI of the Civil Rights Act of 1964 by creating and allowing a cultural of discrimination and false education based on race and national origin to permeate Child V.V.'s educational program or activity and all aspects of Child V.V.'s educational environment, by convincing Child V.V. that Plaintiff was not safe to be with her child on campus at the Foote School. This hostile and abusive educational environmental was created by decisions, preferences, and conduct engaged in by the Foote School. The severe and pervasive abusive environment was continuous throughout Child V.V.'s enrollment at the Foote School.

168.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Title VI, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, loss of rights, benefits, privileges for which she is entitled to as a member of the Foote School Association, for which Plaintiff is entitled to an award of damages.

169.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Title VI of the Civil Rights Act of 1964, Plaintiff and Child V.V. has suffered, and continues to suffer inconvenience, humiliation, embarrassment, reputational harm, undue burden or expense, and other economic damages and non-economic damages, for which they are entitled to an award of damages.

170.    Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of Title VI of the Civil Rights Act of 1964, for which Plaintiff is entitled to an award of punitive damages in an amount to be determined at trial but no less than Five Hundred Thousand ($500,000.00).

## SEVENTH CAUSE OF ACTION
**COUNT SEVEN:**    **DISCRIMINATION IN VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972**

171.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs designated 1 through 102 with the same force and effect as if fully set forth at length herein.

172.    Title IX of the Education Amendments Act of 1972 states, "No person in the United States shall on the basis of sex, be … subject to discrimination under any education program or activity receiving Federal financial assistance."

173.    To establish a prima facie case of discrimination in violation of Title IX of the Education Amendments of 1972, a plaintiff needs only allege "facts giving rise to a plausible minimal inference of bias." *Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016).

174.    By the above-described conduct, Plaintiff and/or Child V.V. were discriminated against on the basis of her/their sex by Defendants, including, but not limited to, by sexual harassment and sexual misconduct during the educational program or activity offered by the Foote School.

175.    By the above-described conduct, Defendants were on notice of the discriminatory conduct engaged in during the educational program or activity offered by the Foote School. Indeed, the teachers at the Foote School documented such sexual harassment and sexual misconduct on Child V.V.'s academic report that Child V.V.'s educational program or activity "from the comfort

of [the Child's] daddy's lap." The Foote School failed to carry out their duties and obligations pursuant to Title IX to investigate and take corrective action.

176.   By the above-described conduct, Defendants allowed and fostered an environment in which discriminatory and harassing practices that were, and continue to be, sufficiently severe or pervasive to create an environment that is both subjectively and objectively hostile, abusive and retaliatory.

177.   By the above-described conduct, Defendants tolerated, condoned, ratified and/or engaged in the sexually abusive educational environment, or, in the alternative, knew, or should have known, of its existence, yet failed to conduct proper investigations and failed to take remedial action.

178.   By reason of the continuous and ongoing nature of the above-described sexual harassment and sexual discrimination conduct, Plaintiff are entitled to the application of the continuing violation doctrine to the unlawful acts alleged herein.

179.   As a direct and proximate result of Defendants' unlawful actions or inactions, Plaintiff and/or Child V.V. has/have suffered, and will continue to suffer, harm, including, but not limited to, loss of rights, benefits, privileges for which Plaintiff is entitled to as a member of the Foote School Association, and/or loss of educational opportunities that Child V.V. is entitled to as a student at the Foote School, inconvenience, humiliation, embarrassment, reputational harm, undue burden or expense, and other economic damages and non-economic damages.

180.   Plaintiff is entitled to all legal and equitable remedies available for violations of Title IX, including compensatory damages, attorneys' fees and costs and other appropriate relief.

181.    Plaintiff also seeks punitive damages against Defendants because of Defendants' willful and/or reckless disregard for Plaintiff's and/or Child V.V.'s civil rights, in an amount to be determined at trial but no less than Five Hundred Thousand ($500,000.00).

**EIGHTH CAUSE OF ACTION**
**COUNT EIGHT:      RETALIATION   IN   VIOLATION   OF   TITLE   IX   OF   THE
EDUCATION AMENDMENTS OF 1972**

182.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs designated 1 through 102 with the same force and effect as if fully set forth at length herein.

183.    "Under Titles VII and IX, 'a plaintiff claiming retaliation must establish a prima facie case by showing: (1) protected activity by the plaintiff; (2) knowledge by the defendant of the protected activity; (3) adverse action; and (4) a causal connection between the protected activity and the adverse action.' *Papelino v. Albany College of Pharmacy*, 633 F.3d 81, 91 (2d Cir. 2011); see also *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015)." *Castro v. Yale Univ.*, 518 F. Supp. 3d 593 (D. Conn. 2021).

184.    By the above-described conduct, Defendants have retaliated against Plaintiff and/or Child V.V. in violation of Title IX by, *inter alia*, failing to properly investigate Plaintiff's claims of discrimination and sexual harassment in retaliation of a protected activity of Plaintiff's complaint about sex discrimination and sexual harassment and by instigating retaliatory investigation practices.

185.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered, and will continue to suffer, harm, including, but not limited to, loss of rights, benefits, privileges for which she is entitled to as a member of the Foote School Association, inconvenience,

humiliation, embarrassment, undue burden or expense, and other economic damages and non-economic damages.

186.    As a direct and proximate result of Defendants' unlawful conduct in violation of Title IX, Plaintiff and/or Child V.V. has suffered, and continue to suffer, harm for which she is/they are entitled to an award of damages to the greatest extent permitted by law, including, but not limited to, monetary and/or economic harm.

187.    As a direct and proximate result of Defendants' unlawful actions, Child V.V. has suffered, and will continue to suffer harm, including, but not limited to, loss of equal educational opportunity and emotional distress.

188.    Plaintiff is entitled to all legal and equitable remedies available for violations of Title IX, including compensatory damages, attorneys' fees and costs and other appropriate relief.

189.    Plaintiff also seeks punitive damages against Defendants because of Defendants' willful and/or reckless disregard for Plaintiff's and/or Child V.V.'s civil rights, in an amount to be determined at trial but no less than Five Hundred Thousand ($500,000.00).

**NINTH CAUSE OF ACTION**
**COUNT NINE:     DISCRIMINATION   IN   VIOLATION   OF   SECTION   504,**
**REHABILITATION ACT OF 1973**

190.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs designated 1 through 102 with the same force and effect as if fully set forth at length herein.

191.    "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794 (a).

192.    In enacting Section 504, Rehabilitation Act of 1973, Congress' express intent is to "protect the legal and human rights of individuals with disabilities." 29 U.S.C. § 794e(a)(1).

193.    "To establish a prima facie violation of section 504, a plaintiff must prove that: 1) he or she is a '[individuals with disabilities]' as defined in the Rehabilitation Act; 2) he or she is 'otherwise qualified' to participate in the offered activity or to enjoy its benefits; 3) he or she is being excluded from such participation or enjoyment solely by reason of his or her [disabilities]; and 4) the program denying the plaintiff participation receives federal financial assistance." *Rothschild v. Grottenthaler*, 907 F.2d 286, 289-90 (2d Cir. 1990) (citing *Doe v. New York University*, 666 F.2d 761, 774-75 (2d Cir. 1981)).

194.    Plaintiff Mother and/or Child V.V. is/are individual with a disability within the meaning of 29 U.S.C. § 705 (20)(B).

195.    Defendant Foote School is a "program or activity" within the meaning of 29 U.S.C. § 794(b)(3)(A)(ii), and receives federal financial assistance.

196.    Child V.V. is "otherwise qualified" to participate in the offered activity or to enjoy its benefits as a student who has been enrolling at the Foote School since September 3, 2019. Child V.V. has been and is being excluded from such participation or enjoyment solely by the reason that Defendants unlawfully discriminated her on the basis of disability, record of disability, and/or because the defendants regarded Plaintiff and/or Child V.V. as disabled.

197.    Plaintiff Mother is "otherwise qualified" to participate in the offered activity or to enjoy its benefits as a member of the Foote School Association since the enrollment of Child V.V. at the Foote School. Plaintiff has been and is being excluded from such participation or enjoyment solely by the reason that Defendants unlawfully discriminated her on the basis of disability, record of disability, and/or because the defendants regarded Plaintiff and/or Child V.V. as disabled.

198.    "The Second Circuit has recognized a private cause of action to enforce section 504. *See Kampmeier v. Nyquist,* 553 F.2d 296, 299 (2d Cir. 1977) (on denial of motion for preliminary injunction); *accord Camenisch v. University of Texas,* 616 F.2d 127, 130-32 (5th Cir.), *cert. granted,* ___ U.S. ___, 101 S.Ct. 352, 66 L.Ed.2d 213 (1980)." *Lynch v. Maher*, 507 F. Supp. 1268, 1279 (D. Conn. 1981).

199.    Defendants have and continue to subject Plaintiff and/or Child V.V. to disparate treatment and disparate impact by directly and indirectly refusing, withholding, and denying the accommodations, full access to facilities, benefits, and privileges of their program or activity because of disability in violation of the Section 504, Rehabilitation Act of 1973.

200.    Defendants violated Section 504, Rehabilitation Act of 1973 by intentionally stalking, harassing, and discriminating Plaintiff and by falsely, maliciously reporting to the New Haven Police Officer Harpe (Badge No. 40801) on September 4, 2019 that Plaintiff Mother was "ridiculous," … "mentally ill," … Plaintiff coming to the Foote School picking up her child "is creating a scene"…"creating a problem" ... "for students and her own daughter;" … "Because [Plaintiff] is mentally ill, the likelihood of her showing up again to pick up her daughter [at the Foote School] is pretty high." *See ante*, ¶ 58. Defendants then issued a official statement to Plaintiff in denying her rights to participate in the offered activity or to enjoy its contractual benefits offered at the Foote School that "[Foote School] can no longer allow Plaintiff to come on [Foote School] campus. If [Plaintiff] do not abide, [Foote School] will call the New Haven Police. This will remain in place until [Plaintiff] can provide documentation from the court stating otherwise." *See ante*, ¶ 59.

201.   Defendants also violated Section 504, Rehabilitation Act of 1973 by showing deliberate indifference to Plaintiff's numerous requests for accommodations or relief to Plaintiff and to Child V.V.

202.   As a direct and proximate result of Defendants' unlawful discrimination in violation of Section 504, Rehabilitation Act of 1973, Plaintiff has suffered, and continues to suffer inconvenience, humiliation, embarrassment, undue burden or expense, and other economic damages and non-economic damages.

203.   As a direct and proximate result of Defendants' unlawful discrimination in violation of Section 504, Rehabilitation Act of 1973, Child V.V. has suffered, and continues to suffer emotional distress and mental anguish.

204.   Defendants' unlawful discrimination conduct constitutes malicious, willful, and wanton violation of Section 504, Rehabilitation Act of 1973 for which Plaintiff is entitled to an award to recover the damage she and/or Child V.V. suffered and continue to suffer.

205.   Plaintiff also seeks punitive damages against Defendants because of Defendants' willful and/or reckless disregard for Plaintiff's and/or Child V.V.'s civil rights, in an amount to be determined at trial but no less than Five Hundred Thousand ($500,000.00).

**TENTH CAUSE OF ACTION**

**COUNT TEN:       RETALIATION   IN   VIOLATION   OF   SECTION   504,
REHABILITATION ACT OF 1973**

206.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs designated 1 through 102 with the same force and effect as if fully set forth at length herein.

207.   To establish a prima facie case of retaliation, "the elements of a retaliation claim under either Section 504 or the ADA are (i) a plaintiff was engaged in protected activity; (ii) the

alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Board of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002)(citation omitted.)

208.     A request for reasonable accommodation is an [Section 504]-protected activity. *Id.*, at 149. Plaintiff receives protection even if she was not entitled to the reasonable accommodation, as long as she made her request in good faith. *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000).

209.     Plaintiff requested for reasonable accommodation of disability regarded by Defendants in or around September 2019, including, but not limited to, fully and equally use Defendants' program or activity in the same manner as non-disabled peers; and equal educational opportunity for Child V.V. in the program or activity at the Foote School.

210.     One of the accommodations Plaintiff requested were enjoyed by her similarly situated parents.

211.     Nevertheless, Defendants ignored and denied Plaintiff's requested for reasonable accommodation of disability regarded by Defendants and in return retaliated Plaintiff for making such request.

212.     Defendants violated the Section 504 by denying her and her Child the accommodation enjoyed by similarly-situated peers, by intimidating her to stop contacting and subpoenaing the Foote School with a threat, and by deleting Plaintiff's online Parent Portal account on the Foote School's website. The retaliatory act was by decisions, preferences and conduct of Defendants.

213.    By failing to comply with the Section 504, Rehabilitation Act of 1973 but in return retaliating Plaintiff for making a request for reasonable accommodation, Defendants have articulated to disabled persons such as Plaintiff and/or Child V.V. that they are subject to injury as a participant at Defendants' program or activity.

214.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Section 504, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, loss of rights, benefits, privileges for which she is entitled to as a member of the Foote School Association.

215.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Section 504, Plaintiff and Child V.V. has suffered, and continues to suffer inconvenience, humiliation, embarrassment, and undue burden, for which they are entitled to an award of damages.

216.    The Foote School's unlawful and retaliatory actions constitute malicious, willful and wanton violations of Section 504, for which Plaintiff is entitled to an award of punitive damages in an amount to be determined at trial but no less than Five Hundred Thousand ($500,000.00).

**COUNT ELEVEN:**          **ELEVENTH CAUSE OF ACTION**
**WILLFUL VIOLATION OF CONNECTICUT GENERAL STATUTES SECTION 10-15b(c) AND 10-188.**

217.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs designated 1 through 102 with the same force and effect as if fully set forth at length herein.

218.    "Attendance at [the Foote School] satisfies the requirements of General Statutes § 10-184, which allows a child to attend a school other than a public school if [she] receives

"equivalent instruction in the studies taught in the public schools," and § 10-188, which requires

the teachers of private schools to keep registers of attendance and to make reports and returns

similar to those received from the public schools." *Snyder v. Newtown*, 147 Conn. 374 (1960).

219.    Conn. General Statutes § 10-188 provides in relevant part:

"Attendance of children at a school other than a public school shall not be regarded as
compliance with the laws of the state requiring parents and other persons having control of
children to cause them to attend school, unless the teachers or persons having control of
such school file with the Commissioner of Education student attendance reports at such
times and in such forms as the commissioner prescribes, and make such reports and returns
concerning the school under their charge to the Commissioner of Education as are required
from boards of education concerning the public schools. . . ."

220.    Defendants, under the mandate of Conn. General Statutes § 10-188, must keep

registers of attendance and to make reports and returns similar to those received from the public

schools concerning Child V.V.'s attendance at the Foote School.

221.    Conn. General Statutes § 10-15b (c) provides in relevant part:

"If any private or public school is served with a subpoena issued by competent authority
directing the production of school or student records in connection with any proceedings
in any court, the school upon which such subpoena is served may deliver such record or at
its option a copy thereof to the clerk of such court. . . . Any such record or copy so delivered
to such clerk shall be sealed in an envelope . . . . No such record or copy shall be open to
inspection by any person except upon the order of a judge of the court concerned, and any
such record or copy shall at all times be subject to the order of such judge. . . ."

222.    Plaintiff, through counsel, served the Foote School on July 20, 2021 with a

subpoena issued by a Commissioner for the Superior Court directing the production of school or

student records of Child V.V. in connection with the proceedings in the Superior Court of New

Haven.

223.    The Foote School failed to comply and continued to refuse to comply with said

subpoena in violation of Conn. General Statutes §§ 10-15b and 10-188.

224.    By failing to comply with Connecticut law, Defendants have articulated to parents

such as Plaintiff that they are subject to injury at the Foote School.

225.    Defendants' failure to comply with Conn. General Statutes §§ 10-15b and 10-188 constitutes a pattern of blatantly unlawful practices, acts and omissions happening at the Foote School.

226.    As a direct and proximate result of Defendants' unlawful noncompliance in violation of Conn. General Statutes §§ 10-15b and 10-188, Plaintiff has and will continue to suffer damages for which Plaintiff is entitled to an award to recover.

|  |  |
|---|---|
| | **TWELFTH CAUSE OF ACTION** |
| **COUNT TWELVE:** | **BREACH OF CONTRACT (42 U.S.C. §§ 1981(C) AND 1983)** |

227.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs designated 1 through 102 with the same force and effect as if fully set forth at length herein.

228.    Under the common law of Connecticut, a party may repudiate certain types of contracts prior to the time of performance, thereby entitling the non-repudiating party to damages for total breach. *See, e.g., Batter Building Materials Co. v. Kirschner*, 142 Conn. 1 (1954); *Harley v. Indian Spring Land Company*, 123 Conn. App. 800 (2010); *Martin v. Kavanewsky*, 157 Conn. 514 (1969).

229.    "'A positive statement to the promisee that the promisor will not perform his contract constitutes an anticipatory breach which is a total breach of contract.' *Sagamore Corporation v. Willcutt*, 120 Conn. 315, 318, 180 A. 464 (1935); *Wonalancet v. Banfield*, 116 Conn. 582, 586, 165 A. 785 (1933); 4 Corbin, Contracts 959, 973. The defendants' breach excused the plaintiff from further performance. *McCleave v. Flanagan Co.*, 115 Conn. 36, 40, 160 A. 305 (1932); *Segan Construction Corporation v. Nor-West Builders, Inc.*, 274 F. Sup. 691, 697 (D. Conn. 1967); 17 Am. Jur. 2d, Contracts, 448, 449." *Martin v. Kavanewsky*, 157 Conn. 514, 518-19 (1969).

230.    The Foote School Parent Handbook and the charter of the Foote School constitute an agreement between the Foote School and Plaintiff.

231.    The Foote School breached its agreement by denying Child V.V.'s full and equal educational opportunity and full access to its facilities, programs, and place of public accommodation; and by denying Plaintiff full access to its facilities, place of public accommodation, and rights, privileges, and benefits provided in the charter of the Foote School, under color of the federal and state constitutions, statutes, laws, rules, regulations, customs and usages of the State of Connecticut, in violation of 42 U.S.C. §§ 1981 and 1983.

232.    In addition to failing to perform its obligations pursuant to the agreement, the Foote School's conduct constitutes a total breach of contract by repudiation of any future performance in issuing an official statement to Plaintiff on September 4, 2019—the second day of Child V.V.'s enrollment at the Foote School—stating "[the Foote School] can no longer allow Plaintiff to come on [the Foote School] campus. If [Plaintiff] do not abide, [the Foote School] will call the New Haven Police." *See ante*, ¶¶ 58-59.

233.    The Foote School also, on April 23, 2021, issued an official statement to Plaintiff repudiating any future performance specified in its agreement with Plaintiff, stating in relevant part, "Please be advised that [Plaintiff] or any person acting as [Plaintiff's] proxy or on [Plaintiff's] behalf may not come to the Foote Campus. We request that [Plaintiff] kindly stop contacting the school in any matter, including in writing, electronically, or by telephone. [Plaintiff] will not receive a response to [Plaintiff's] communications. If [Plaintiff] continue to call or send emails to the school, [the Foote School] will contact the New Haven Police."

234.   As a direct and proximate result of the Foote School's total breach of contract by repudiation of any future performance to Plaintiff, Plaintiff has suffered and will continue to suffer damages for which she is entitled to recover for a total breach.

### THIRTEENTH CAUSE OF ACTION
**COUNT THIRTEEN:**           **TORTIOUS INTERFERENCE WITH CONTRACT**

235.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs designated 1 through 102 with the same force and effect as if fully set forth at length herein.

236.   Under Connecticut common law, "[t]he [Connecticut Supreme] Court has long recognized a cause of action for tortious interference with contract rights or other business relations. The essential elements of such a claim include, of course, the existence of a contractual or beneficial relationship and that the defendant(s), knowing of that relationship, intentionally sought to interfere with it; and, as a result, the plaintiff claimed to have suffered actual loss." *Solomon v. Aberman*, 196 Conn. 359, 364 (1985) (internal quotation and citations omitted.)

237.   "[F]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously. The burden is on the plaintiff "to plead and prove at least some improper motive or improper means"; on the part of the defendants." *Id.*, at 365 (internal quotation and citations omitted.)

238.   The Settlement Agreement between Plaintiff and a third party, E.V., provides the joint legal custody of, and joint decision-making rights and responsibilities concerning the Child and Plaintiff is the primary custodian of Child V.V. The Settlement Agreement was incorporated, *but not merged into*, the parents' Foreign Matrimonial Judgment, and further provides its own

"Binding Effect" upon the parents independently survived from the parents' Foreign Matrimonial Judgment as well as a waiver for modification. See *ante*, ¶¶ 62-65. Since the parents entered into the Settlement Agreement on June 18, 2015, the Settlement Agreement had been executed accordingly up to Defendants' intentional interference on September 4, 2019.

239.    Defendants was fully aware and had prior knowledge to September 4, 2019 of the Settlement Agreement. In fact, between April 2017 and August 30, 2019, Plaintiff was the Foote School's primary parent contact concerning Child V.V.'s application, admission, registration, and enrollment at the Foote School. See *ante*, ¶¶ 33-56. The Foote School also has a copy of the Settlement Agreement provided by Plaintiff during the "kindergarten parent interview" appointment on January 11, 2018 with the Director and Associate Director of Admissions at the Foote School.

240.    In intentionally, maliciously denying the "validity" of parents' Settlement Agreement, (see *ante*, ¶ 82) Defendants' intentional procurement of the third-party E.V.'s breach of the contract without justification intentionally, maliciously sought to interfere with the Settlement Agreement that independently binds between Plaintiff and E.V.

241.    Defendants' intentional, malicious interference with the parents' Settlement Agreement caused and will continue to cause actual breach of the contract between Plaintiff and third-party E.V.

242.    Defendants' unlawful practices, acts and omissions, under color of the federal and state constitutions, statutes, laws, rules, regulations, customs and usages of the State of Connecticut, caused and will continue to cause substantial impairment and deprivation of Plaintiff's contractual and constitutional rights and obligations in care, custody, and control of her minor child V.V. and Plaintiff's equal right in the State of Connecticut "to make and enforce contracts, … and to the full

and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens," in violation of 42 U.S.C. §§ 1981, 1983, and 1985.

243.     By intentionally, malicious interfering with the parents' Settlement Agreement, Defendants have articulated to the parents such as Plaintiff that they are subject to injury at the Foote School. The social interest at stake is that Defendants' interference with two parents' Settlement Agreement discriminatorily, maliciously put one of the divorced parents in a worse position than he or she was before the two reached a Settlement Agreement upon divorce.

244.     Defendants intentionally harassed and intimidated Plaintiff whenever she asserted her rights under federal and state constitutions, statutes, laws, rules, regulations, customs or usages of the State of Connecticut in a manner that was highly offensive to a reasonable person to the degree of shocking the conscience.

245.     Defendants intentionally harassed, intimidated, and falsely educated Child V.V. whenever Plaintiff asserted her rights or asserted rights on behalf of Child V.V. in a manner that was equally offensive to a reasonable person to the degree of shocking the conscience.

246.     As a direct and proximate result of the Foote School's intentional, malicious interference, intimidation and false report, Plaintiff has and will continue to suffer damages for which Plaintiff is entitled to recover.

<strong>FOURTEENTH CAUSE OF ACTION</strong>

**COUNT FOURTEEN:**          **VIOLATION     OF     PLAINTIFF'S     FOURTEENTH AMENDMENT RIGHTS AND INVASION OF PRIVACY (42 U.S.C. §§ 1981(C), 1983, 1985 AND 1986)**

247.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs designated 1 through 102 with the same force and effect as if fully set forth at length herein.

248.    The fundamental liberty interest of a parent in the care, custody, and control of his or her child—"perhaps the oldest of the fundamental liberty interests recognized by this Court" *Troxel v. Granville*, 530 U.S. 57, 65 (2000) and "deeply rooted in [our] history and tradition." *Dobbs v. Jackson Women's Health Organization*, 597 U.S. ___ (2022) (slip op., at 2).

249.    "The Fourteenth Amendment's Due Process Clause has a substantive component that provides heightened protection against government interference with certain fundamental rights and liberty interests, including parents' fundamental right to make decisions concerning the care, custody, and control of their children." *Troxel,* 530 U.S., at 57 (internal quotation and citation omitted).

250.    In *Griswold v. Connecticut*, 381 U.S. 479 (1965), the U.S. Supreme Court found a right to privacy, derived from penumbras of other explicitly stated constitutional protections. The Court used the personal protections expressly stated in the First, Third, Fourth, Fifth, and Ninth Amendments of the United States Constitution to find that there is an implied right to privacy in the Constitution, known as "the zones of privacy" accorded constitutional protection. In *Whalen v. Roe*, 429 U.S. 589 (1977), the Court recognized the right to privacy also guaranteed under the Due Process Clause of the Fourteenth Amendment.

251.    "In *Whalen v. Roe*, the Supreme Court recognized that there exists in the United States Constitution a right to privacy protecting the individual interest in avoiding disclosure of personal matters." *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994) (internal quotation omitted.) "More precisely, this right to privacy can be characterized as a right to 'confidentiality.'" *Id.*, at 267. "[T]he right to confidentiality includes the right to protection regarding information about the state of one's health." *Ibid.*

252.    "'The Second Circuit has consistently held that although the right to privacy is 'one of the less easily delineated constitutional guarantees,' it encompasses 'the individual interest in avoiding disclosure of personal matters.'" *Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) (internal quotation marks omitted); see also *Hancock v. Cty. of Rensselaer*, 882 F.3d 58, 65 (2d Cir. 2018) (noting the Second Circuit "ha[s] explicitly recognized the right to privacy in one's personal information.")

253.    It is the purpose of the ADA "(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities." 42 U.S.C. § 12101(b).

254.    Defendants violated and continue to violate Plaintiff's due process right to make decisions concerning the care, custody, and control of her Child V.V., immediately after Plaintiff successfully completed Child V.V.'s application, registration, and enrollment at the Foote School on September 3, 2019.

255.    Defendants violated and continue to violate, upon the solitude or seclusion of Plaintiff, Plaintiff's right to privacy "includes the right to protection regarding information about the state of [Plaintiff's] health" *Doe v. City of New York,* supra, at 267, by falsely, maliciously reporting to the New Haven Police Officer Harpe (Badge No. 40801) that, *inter alia*, Plaintiff was "mentally ill," "[Plaintiff] is mentally ill, the likelihood of her showing up again to pick up her

daughter [at the Foote School] is pretty high;" and threatening that "every time Plaintiff shows up, [the Foote School] have to call the husband or call the police;" and "this will remain in place until [Plaintiff] can provide documentation from the court stating otherwise." *See ante*, ¶¶ 58-59.

256.    Defendants further violated Plaintiff's due process right under the Fourteenth Amendment by stating that "[Foote School] still have the same policy in place … that [Plaintiff] was not permitted on campus. It is still standing,"… "legally, while [Plaintiff's Child] is on campus, [the Child] is [Foote School's] property," (*see ante*, ¶ 92) in depriving Plaintiff of fundamental liberty interest as a parent in the care, custody, and control of her child.

257.    By failing to accord with the Constitution, the supreme law of the United States, Defendants have expressed to parents and families in the community such as Plaintiff and Child V.V. that they are subject to injury at the Foote School.

258.    Although Defendants regarded Plaintiff and/or Child V.V. as individual with disability within the meaning of 42 U.S.C. § 12102(1)(C), Defendants' failure to make accommodations to Plaintiff and/or Child V.V. and failure to make its place of public accommodation at 50 Loomis Place, New Haven, CT 06511 fully accessible to Plaintiff and/or Child V.V. after Plaintiff's numerous requests since September 4, 2019 also violated the ADA as amended, contravening Congress' express intent to enforce the Fourteenth Amendment protection to individuals with disabilities in enacting the ADA.

259.    As a direct and proximate result of the Foote School's unlawful violation of the Fourteenth Amendment and the right to privacy, Plaintiff has and will continue to suffer damages for which Plaintiff is entitled to an award to recover.

260.    Plaintiff also seeks punitive damages against Defendants because of Defendants'

willful and/or reckless disregard for Plaintiff's and/or Child V.V.'s civil rights, in an amount to be

determined at trial but no less than Five Hundred Thousand ($500,000.00).

**FIFTEENTH CAUSE OF ACTION**

**COUNT FIFTEEN:**    **WILLFUL VIOLATION OF CONNECTICUT GENERAL STATUTES SECTION 17a-83 AND 17a-504**

261.    Plaintiff repeats, reiterates and realleges each and every allegation contained in

paragraphs designated 1 through 102 with the same force and effect as if fully set forth at length

herein.

262.    Conn. General Statutes § 17a-83 provides in relevant part:

"Any person who willfully files or attempts to file or conspires with any person to file a fraudulent or malicious application, order or request for the commitment, hospitalization or treatment of any child pursuant to section 17a-76, 17a-78 or 17a-79, and any person who wilfully certifies falsely to the mental disorder of any child in any certificate provided for in this part,… shall be guilty of a class D felony."

Conn. General Statutes § 17a-504 provides in relevant part:

"Any person who wilfully and maliciously causes, or attempts to cause, or who conspires with any other person to cause, any person who does not have psychiatric disabilities to be committed to any hospital for psychiatric disabilities, and any person who wilfully certifies falsely to the psychiatric disabilities of any person in any certificate provided for in sections 17a-75 to 17a-83, inclusive, 17a-450 to 17a-484, inclusive, 17a-495 to 17a-528, inclusive, 17a-540 to 17a-550, inclusive, 17a-560 to 17a-575, inclusive, and 17a-615 to 17a-618, inclusive, … shall be guilty of a class D felony."

263.    Pursuant to the 2019-2020 Foote School Parent Handbook,

"The Health Team consists of the Head of School, Head of Lower School, Head of Middle School, Assistant Middle School Head, the School Nurse, the Consulting Child Psychiatrist, the Consulting Pediatrician, and the School Counselor. Other faculty members attend meetings periodically. This team meets regularly to review issues pertaining to the welfare of members of the school community."

264.    Defendants Carol Maoz and David Sklar wilfully and maliciously attempted to

cause, or conspired with other person to cause, Plaintiff who does not have psychiatric disabilities

to be committed to any hospital for psychiatric disabilities on September 4, 2019, in violation of Conn. General Statutes § 17a-504.

265.    Defendant Aléwa Cooper and Chrissy Khachane willfully filed or attempted to file or conspired with other person to file a fraudulent or malicious application, order or request for the commitment, hospitalization or treatment of any child pursuant to section 17a-76, 17a-78 or 17a-79, and/or wilfully certified falsely to the mental disorder of Child V.V. in any certificate provided for in this part," in violation of Conn. General Statutes § 17a-83.

266.    By violating the Connecticut law in effect for decades, Defendants have articulated to the parents, children, and community at large such as Plaintiff and her Child V.V. that they are subject to injury at the Foote School.

267.    As a direct and proximate result of Defendants' unlawful violation of Conn. General Statutes §§ 17a-83 and 17a-504, Plaintiff and/or Child V.V. has/have and will continue to suffer damages for which Plaintiff is entitled to an award to recover.

**COUNT SIXTEEN:**          **SIXTEENTH CAUSE OF ACTION**
                            **WILLFUL VIOLATION OF CONNECTICUT GENERAL STATUTES SECTION 17a-101a(b)(1)**

268.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs designated 1 through 102 with the same force and effect as if fully set forth at length herein.

269.    The Foote School's employees are "mandated reporter" under Conn. General Statutes § 17a-101(b)(9).

270.    Conn. General Statutes § 17a-101a(b) provides in relevant part:

"(1) Any person required to report under the provisions of this section who fails to make such report or fails to make such report within the time period prescribed in sections 17a-101b to 17a-101d, inclusive, and section 17a-103 shall be guilty of a class A misdemeanor, except that such person shall be guilty of a class E felony if (A) such violation is a

subsequent violation, (B) such violation was wilful or intentional or due to gross negligence, or (C) such person had actual knowledge that (i) a child was abused or neglected, as described in section 46b-120, or (ii) a person was a victim described in subdivision (2) of subsection (a) of this section.

(2) Any person who intentionally and unreasonably interferes with or prevents the making of a report pursuant to this section, or attempts or conspires to do so, shall be guilty of a class D felony. The provisions of this subdivision shall not apply to any child under the age of eighteen years or any person who is being educated by the Technical Education and Career System or a local or regional board of education, other than as part of an adult education program."

271.    Child V.V.'s teachers in Homeroom 1 of Grade One at the Foote School documented in the 2020-2021 LS-Fall Term Report Card of child abuse—"from the comfort of [Child V.V.'s] daddy's lap"—during the Child's education program or activity offered online by the Foote School Defendants failed to make such report and failed to make such report within the time period prescribed in sections 17a-101b to 17a-101d, inclusive, and section 17a-103 in violation of § 17a-101a(b).

272.    As a direct and proximate result of Defendants' intentional, unlawful violation of Conn. General Statutes § 17a-101a(b), Plaintiff has and will continue to suffer damages.

273.    As a direct and proximate result of Defendants' intentional, unlawful violation of Conn. General Statutes § 17a-101a(b), Child V.V. has and will continue to suffer emotional and physical distress and mental anguish.

## SEVENTEENTH CAUSE OF ACTION
COUNT SEVENTEEN:    WILLFUL VIOLATION OF CONNECTICUT GENERAL STATUTES SECTION 53a-98 AND 53a-97

274.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs designated 1 through 102 with the same force and effect as if fully set forth at length herein.

275.    Conn. General Statutes § 53a-98(a)(3) provides in relevant part:

"A person is guilty of custodial interference in the second degree when … knowing that he has no legal right to do so, he holds, keeps or otherwise refuses to return a child who is less

than sixteen years old to such child's lawful custodian after a request by such custodian for the return of such child."

276.     Defendants, on September 4, 2019, the second day of school and the second of Child V.V.'s enrollment at the Foote School, Defendants stalked, harassed, and discriminated Plaintiff to hold, keep, or otherwise refuse to return Child V.V. who was less than sixteen years old at that time to Plaintiff after Plaintiff went to the Foote School to pick up Child V.V. during the After School Program after the dismissal time. See *ante*, ¶¶ 58-59. Defendant additionally issued an official statement to Plaintiff, stating in relevant part:

> "[the Foote School] can no longer allow you to come on [the Foote School] campus. If [Plaintiff] do not abide, [the Foote School] will call the New Haven Police. This will remain in place until [Plaintiff] can provide documentation from the court stating otherwise." *Ibid*.

277.     Defendants was fully aware and had prior knowledge to September 4, 2019 of the Settlement Agreement that provides the parents' contractual rights and obligations concerning Child V.V. In fact, between April 2017 and August 30, 2019, Plaintiff was the Foote School's primary parent contact concerning Child V.V.'s application, admission, registration, and enrollment at the Foote School. The Foote School also has a copy of the Settlement Agreement provided by Plaintiff during the "kindergarten parent interview" appointment on January 11, 2018 with the Director of Admissions and Outreach at the Foote School.

278.     Conn. General Statutes § 53a-97(a)(1) provides in relevant part:

"A person is guilty of custodial interference in the first degree when he commits custodial interference in the second degree as provided in section 53a-98: (1) Under circumstances which expose the child or person taken or enticed from lawful custody or the child held after a request by the lawful custodian for his return to a risk that his safety will be endangered or his health materially impaired."

279.     Defendants Chrissy Khachane told Plaintiff over the phone, alleging that "[Foote School] still have the same policy in place ... that [Plaintiff] was not permitted on campus. It is still standing,"... "legally, while [Plaintiff's Child] is on campus, [the Child] is [Foote School's]

property." Defendants further injured Child V.V. by falsely educating and intimidating Child V.V.

that "Plaintiff was not safe to be with her child on campus at the Foote School." *See ante*, ¶92.

280.    Child V.V. have been deeply devastated by Defendants' unlawful, harassing, and

retaliatory conducts.

281.    Defendants violated Conn. General Statutes § 53a-97 by continuing to expose Child

V.V. to a risk that her mental health will be materially impaired.

282.    As a direct and proximate result of Defendants' intentional, unlawful violation of

Conn. General Statutes §§ 53a-98 and 53a-97, Plaintiff has and will continue to suffer damages.

283.    As a direct and proximate result of Defendants' unlawful violation of Conn.

General Statutes §§ 53a-98 and 53a-97, Child V.V. has and will continue to suffer emotional and

physical distress, mental anguish, and loss of equal educational opportunity.

**EIGHTEENTH CAUSE OF ACTION**

**COUNT EIGHTEEN:**          **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

284.    Plaintiff repeats, reiterates and realleges each and every allegation contained in

paragraphs designated 1 through 102 with the same force and effect as if fully set forth at length

herein.

285.    "In order for the plaintiff to prevail in a case for liability under . . . [intentional

infliction of emotional distress], four elements must be established. It must be shown: (1) that the

actor intended to inflict emotional distress or that [the defendant] knew or should have known that

emotional distress was the likely result of his conduct; (2) that the conduct was extreme and

outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that

the emotional distress sustained by the plaintiff was severe. . . ." *Carrol v. Allstate Ins. Co*., 262

Conn. 433, 442-43 (2003) (internal quotation marks omitted.)

286.     Defendants acted, under color of the federal and state constitutions, statutes, laws, rules, regulations, customs and usages of the State of Connecticut, with the clear intent to inflict emotional distress on Child V.V.

287.     As educators in elementary and secondary education, Defendants knew or should have known that emotional distress was the likely result of their conduct. Indeed, as confessed by the Business Manager/CFO of the Foote School, Defendant David Sklar, to the New Haven Police Officer Harpe (Badge No. 40801) on September 4, 2019, "it is sad," see *ante*, ¶¶ 58-59.

288.     Child V.V. has been deeply saddened and devastated by Defendants' unlawful, harassing, and retaliatory conducts that sustained till this date.

289.     Defendants' severe and pervasive unlawful actions inflicted upon Plaintiff and Child V.V. were so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.

290.     As a direct and proximate result of Defendants' unlawful conducts that shock the conscience, Child V.V. has and will continue to suffer emotional and physical distress, mental anguish, and loss of equal educational opportunity.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court

A.     Retain jurisdiction of this matter until the Court is satisfied that the defendants' unlawful practices, acts and omissions no longer exist and will not reoccur.

B.     Order a temporary injunction to enjoin the defendants, upon penalty to be determined by the Court, from using Plaintiff's and/or Child V.V.'s (regarded) disability against Plaintiff and/or Child V.V. to impede the completion of Child V.V.'s Foote School studies.

C.    Order a temporary injunction to enjoin the defendants, upon penalty to be determined by the Court, from taking any further actions to impede or block Child V.V.'s ability to complete her primary school.

D.    Reinstate Plaintiff as a parent of Child V.V. at the Foote School.

E.    Order the defendants to make place of public accommodation fully accessible so that Plaintiff and/or her minor child and other similarly situated can have the full and equal opportunity that the defendants provide to non-disabled peers.

F.    Order specific performance of the contract such that Child V.V. is permitted to finish her primary school studies and Plaintiff is permitted to access the Foote School during the drop-off and pick-up hours, including, but not limited to, Chinese Delegation Assembly, mother-daughter program and activity, Fall Family Fun Day, and all other rights and privileges entitled to a member of the Foote School Association.

G.    Declare that the decision to deny Plaintiff's full access to the defendants' School was improper and void.

H.    Declare that the actions, conduct, and practices of the defendants violated the racial nondiscriminatory policy of the Foote School with respect to use of facilities, exercise of Child V.V.'s rights and privileges, educational and athletic programs, and other extracurricular activities as a student at the Foote School.

I.    Declare that the actions, conduct, and practices of the defendants complained of herein violate the laws of the United States and the State of Connecticut.

J.    Declare that the defendants violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution.

K.      Declare that the defendants violated Plaintiff's rights under Conn. General Statutes §§ 10-15b(c) and 10-188.

L.      Declare that the defendants violated Conn. General Statutes §§ 17a-83 and 17a-504.

M.      Declare that the defendants violated Conn. General Statutes § 17a-101a(b)(1).

N.      Declare that the defendants violated Conn. General Statutes §§ 53a-97 and 53a-98.

O.      Declare that the defendants violated Art. XXI of Amendments to the Constitution of the State of Connecticut.

P.      Award at least Five Hundred Thousand ($500,000.00) Dollars to Plaintiff as compensatory damages, plus pre-judgment interest, as a result of the defendants' each and every violation of 42 U.S.C. §§ 1981, 1983, 1985, and 1986.

Q.      Award at least Five Hundred Thousand ($500,000.00) Dollars to Plaintiff as punitive damages in order to punish and deter the defendants for their violations of 42 U.S.C. §§ 1981, 1983, 1985, and 1986.

R.      Award Plaintiff as least One Hundred Thousand ($100,000.00) Dollars for the defendants' each and every breach and violation of the laws, including, but not limited to the ADA, 42 U.S.C. § 12101 *et seq.*; Title VI of Civil Rights Act, 42 U.S.C. § 2000d *et seq.*; Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*; Equal Educational Opportunities Act of 1974, 20 U.S.C. § 1701 *et seq.*; Section 504, Rehabilitation Act of 1973, 29 U.S.C. § 794; and Fourteenth Amendment of the United States Constitution.

S.      Award at least Five Hundred Thousand ($500,000.00) Dollars to Plaintiff as compensatory damages for the defendants' conspiracy to injure Plaintiff and negligence to deprive Plaintiff of her equal rights under the law, contractual rights under the membership in the Foote School Association and Foote School Parent Handbook, constitutional right to privacy, and

constitutional rights and contractual rights and obligations in care, custody, and control of her minor child V.V.

      T.     Find the defendants in civil and criminal contempt for her willful violation under Conn. Gen. Stat. §§ 10-15b(c), 10-188, 17a-83, and 53a-98.

      U.     Award punitive damages in an amount this court shall consider to be just, reasonable and fair.

      V.     Award compensatory damages for both the pecuniary and non-pecuniary losses suffered by Plaintiff in an amount to be determined at trial.

      W.     Award damages to be determined at trial, plus prejudgment interest, to compensate Plaintiff and/or Child V.V. for harm to Child V.V. for loss of parental consortium of Plaintiff and equal educational opportunity.

      X.     Award liquidated damages.

      Y.     Order the defendants to pay all medical costs incurred by Child V.V. as a result of from emotional and physical distress, mental anguish, discrimination and harassment she suffered and the failure to accommodate her (regarded) disability.

      Z.     Order the defendants to pay Plaintiff the costs and disbursement of this action, together with reasonable attorneys' fees.

      AA.     For such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues properly trial by jury in this action.

Respectfully submitted,

BY: Vanessa Wang

Plaintiff, In *Pro Se*
54 Linden Street
New Haven, CT 06511
Phone: (475) 313-9839
vanessa@childlessmotherfoundation.org



# Exhibit A