# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| VANESSA WANG,<br>　　　Plaintiff, | No. 3:22-cv-01127 (SRU) |
| 　　v. | |
| FOOTE SCHOOL ASSOCIATION INC., et<br>al.,<br>　　　Defendants. | |

## <u>ORDER</u>

Vanessa Wang ("Wang"), proceeding *pro se*, commenced this civil rights lawsuit against Foote School Association Incorporated (the "Foote School"), the school her minor daughter attends. *See* Compl., Doc. No. 1. In addition, Wang named as defendants several of the Foote School's current and former administrators, Carol Maoz ("Maoz"), Alewa Cooper ("Cooper"), David Sklar ("Sklar"), and Chrissy Khachane ("Khachane"). *Id.*

In December 2022, Wang filed a motion for a restraining order. *See* Pl. Mot. for Temporary Restraining Order ("TRO"), Doc. No. 30. In response, the defendants filed an opposition to the motion for a temporary restraining order, doc. no. 34, and a motion to dismiss[1], doc. no. 35, arguing, *inter alia*, that this Court lacks subject matter jurisdiction. The defendants also maintain that Wang's complaint fails to state a claim. *See generally* Defs. Mot. to Dismiss for Lack of Jurisdiction, Doc. No. 35. Wang opposed the motion to dismiss in March 2023, doc. no. 51, and I held oral argument on the motion in June 2023, *see* min. entry, doc. no. 79.

---

[1]　　　There are two motions to dismiss currently pending in this case. *See* Defs. Mot. to Dismiss for Failure to Timely Serve, Doc. No. 26; Defs. Mot. to Dismiss for Lack of Jurisdiction, Doc. No. 35. The first motion to dismiss, doc. no. 26, relates to the two defendants, Foote School and Cooper, who were not timely served. Wang objected to that motion, arguing that the delay was only by 9 days. *See* Pl. Opp. to Defs. Mot. to Dismiss for Failure to Timely Serve, Doc. No. 38. Because I conclude there was no prejudice to those defendants, and in light of Wang's *pro se* status, that motion to dismiss, doc. no. 26, is **denied**.

For the reasons that follow, the defendants' motion to dismiss, doc. no. 35, is **granted**, and Wang's motion for a temporary restraining order, doc. no. 30, is **denied** without prejudice.

## I.    BACKGROUND

### A.    Factual Background

Wang and Edward Vytlacil ("Vytlacil") were married in April 2013, and have one minor child, V.V., born in December 2013. *See* Compl., Doc. No. 1, at ¶¶ 61–62; *V. V. v. V. V.*, 218 Conn. App. 157, 161 (2023). On September 10, 2015, the Supreme Court of the State of New York, County of New York, dissolved the marriage between Wang and Vytlacil. *See* Compl., Doc. No. 1, at ¶¶ 61–62; Pl. Ex. I, Doc. No. 39-3. In the dissolution decree, the court incorporated by reference the parties' June 18, 2015 agreement, in which Wang and Vytlacil agreed that they would have joint legal custody of V.V. ("the child") and that they would share parenting time with the child in accordance with a detailed parenting time schedule. *See* Compl., Doc. No. 1, at ¶¶ 61–62; Pl. Ex. I, Doc. No. 39-3. Wang and Vytlacil later relocated to New Haven, Connecticut. *See* Compl., Doc. No. 1, at ¶ 21.

In December 2017, Wang applied for her daughter to attend the Foote School. *Id.* at ¶ 35. The child was denied admission, but the school administrators encouraged Wang to apply the following year. *Id.* at ¶¶ 38–39. Wang submitted another application the following year, and in March 2019, Wang received notification that the child received an offer to enroll in the Fall 2019 kindergarten program. *Id.* at ¶¶ 42–44. Between March 2019 and September 2019, Wang alleges that she had ample communication with the school administrative staff. *Id.* at ¶¶ 45–55. Those communications abruptly ended on September 4, 2019; the child's second day of school. *Id.* at ¶ 58. On that day, Wang alleges that she was stalked, harassed and prevented from picking up the child from school. *Id.* Later that day, Maoz, head of Foote School, emailed Wang the following:

> As per the court order dated August 29, 2019, stating that [you] may not interfere with the custody arrangement or the educational program of [the child], [the Foote School] can no longer allow you to come on [] campus. If [you] do not abide, [the Foote School] will call the New Haven Police. This will remain in place until [you] can provide documentation from the court stating otherwise.

*Id.* at ¶ 59.

Days prior, on August 29, 2019, Judge Goodrow, a Connecticut Superior Court Judge, awarded sole temporary custody of the child to Vytlacil. Defs. Ex. B, Doc. No. 35-2, at 22[2]. The order prohibited Wang from interfering with the educational program of the child and prohibited Wang from visiting the child unless Vytlacil permitted and supervised the visit. *Id.* On September 24, 2019, after a hearing, Judge Klau, another Connecticut Superior Court Judge found that Wang presented an immediate and present risk of psychological harm to the child. *Id.* at 25. Based on that finding, Judge Klau continued Judge Goodrow's prior orders, while further ordering that Wang could not be present at the school without Vytlacil's consent. *Id.* at 24–25. Over the course of several years, additional orders and judgments were put in place restricting Wang's access to the child. *Id.* at 18–32. To date, there is ongoing litigation in state court about the legality of the protective orders. *V. V.*, 218 Conn. App. at 161; Defs. Ex. B, Doc. No. 35-2, at 15–16.

Despite those orders, Wang continued to solicit information about the child from the Foote School. Instead of providing Wang access to its facility or parent notifications, the school met Wang's requests with retaliation "by unlawfully refusing to release reports and attendance records concerning [the child] to Wang[,] and by deleting Wang's online parent portal account." *See* Compl., Doc. No. 1, at ¶ 75. It is unclear when Wang's access to information was suspended.

---

[2]      Exhibit B includes several attachments, including several protective orders. The exhibit does not include a single set of pages numbers. For ease of reference, the page numbers I use when citing to this exhibit are those generated by the court's electronic filing system.

On April 23, 2021, Wang received an email from the school stating that Wang may not come to the Foote School's campus. *Id.* at ¶ 86. In response, Wang served the Foote School on July 21, 2021 with a subpoena directing the production of the child's school or student records. *Id.* at ¶ 87. The Foote School failed to comply. *Id.* at ¶ 88.

    B.    <u>Procedural Background</u>

Wang commenced this lawsuit on September 6, 2022, asserting eighteen causes of action against the defendants. *See generally id.* Principally, she avers that the Foote School violated her constitutional rights by interfering with her parental rights and right to privacy. *Id.* Further, she alleges race and disability discrimination. *Id.* For those alleged violations, she asserts claims under 42 U.S.C. §§ 1981, 1983, 1985(3), and 1986, Title IV of the Civil Rights Act of 1964, Title IX of the Civil Rights Act of 1964, the American with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, the Equal Educational Opportunities Act of 1974, and several state civil and criminal statutes. *Id.*

Months later, on December 12, 2022, Wang moved for a temporary restraining order and preliminary injunction. *See* Pl. Mot. for TRO, Doc. No. 30. In response, I issued an order to show cause, ordering the defendants to file a response by December 22, 2022, explaining why the motion for a temporary restraining order should not be granted. *See* Order to Show Cause, Doc. No. 32. Shortly thereafter, the defendants filed an objection to the motion for a restraining order, doc. no. 34, and a motion to dismiss, doc. no. 35, arguing, *inter alia*,[3] that this Court lacks subject matter jurisdiction. Specifically, the defendants contend that this Court should abstain from exercising jurisdiction, citing the *Rooker-Feldman* and *Younger* doctrines.

---

[3]    The defendants also argue that this case should be dismissed for failure to state a claim, or in the alternative, on res judicata grounds.

Separately, the defendants also moved for a stay of discovery. *See* Defs. Mot. for Stay, Doc. No. 36. I granted the motion for a stay of discovery but allowed Wang to take jurisdictional discovery. *See* Order, Doc. No. 50.

After filing two motions for extensions of time, doc. nos. 45, 48, Wang filed her opposition to the motion to dismiss in March 2023. *See* Pl. Mem. in Opp., Doc. No. 51. I held oral argument on the motion on June 15, 2023. *See* Min. Entry, Doc. No. 79.

## II.     STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). A party who seeks to invoke a court's jurisdiction bears the burden of establishing that it exists by alleging facts to demonstrate that the legal basis for the dispute allows it to be adjudicated in federal court. *Thompson v. Cnty. of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994) (citing *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Although I "accept as true all material allegations of the complaint, and … construe the complaint in favor of the complaining party," I may consider materials outside the record for the purpose of determining whether subject matter jurisdiction exists. *Id.* (quoting *Warth*, 522 U.S. at 501). I may also consider "the full text of documents that are quoted in the complaint or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit." *Holmes v. Air Line Pilots Ass'n.*, 745 F. Supp. 2d 176, 198 (E.D.N.Y. 2010) (cleaned up). If the documents contradict the allegations of the complaint, the documents themselves control and I need not accept as true any contradictory allegations concerning those documents. *Id.*

## III.    DISCUSSION

A.    Abstention

The threshold question in this case is whether I should abstain from adjudicating the

merits of Wang's claims.

Abstention is a judicially-created exception to the general grant of jurisdiction found in

Article III of the United States Constitution. *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496,

501 (1941). The doctrine of abstention allows a federal court to decline or to stay the exercise of

its jurisdiction to give a state court or agency the opportunity to decide an issue. *Colorado River*

*Water Conservation Dist. v. United States*, 424 U.S. 800, 813–814 (1976). Its purpose is twofold:

to prevent unnecessary friction between the federal and state governments, and to reflect the

"proper regard for the rightful independence of state governments in carrying out their domestic

policy." *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 724 (1996).

Familial disputes exemplify one class of cases in which abstention is common. *See*

*Khalid v. Sessions*, 904 F.3d 129, 133 (2d Cir. 2018) ("Family law, after all, is an area of law that

federal courts and Congress leave almost exclusively to state law and state courts.") (cleaned

up); *see also Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967) ("Since the very early

dicta [of] *In re Burrus*, 136 U.S. 586 (1890), it has been uniformly held that federal courts do not

adjudicate cases involving the custody of minors and, a fortiori, rights of visitation.") (cleaned

up). Indeed, the Supreme Court has long recognized a "domestic relations exception" that

"divests the federal courts of power to issue divorce, alimony, and child custody decrees."

*Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992).

That said, abstention from the exercise of federal jurisdiction is the exception, not the

rule. *Colorado River*, 424 U.S. at 813; *accord Cavanaugh v. Geballe*, 28 F.4th 428, 432 (2d Cir.

2022). Federal courts "have a 'virtually unflagging obligation' to exercise their jurisdiction."

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Colorado River*, 424 U.S. at 817). Consequently, abstention is justified under certain limited circumstances. With that in mind, I address the defendants' Rule 12(b)(1) arguments.

### 1.    Rooker-Feldman

The *Rooker-Feldman*[4] doctrine bars federal district courts from hearing "cases that function as *de facto* appeals of state-court judgments." *Sung Cho v. City of N.Y.*, 910 F.3d 639, 644 (2d Cir. 2018). For the *Rooker-Feldman* doctrine to apply, four requirements must be met; two of which "may be loosely termed procedural," and two of which "may be termed substantive." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005).

The procedural elements are satisfied when: (1) the federal plaintiff lost in state court; and (2) the state court judgment was rendered before the district court proceedings commenced. *Id.* The substantive requirements are satisfied when: (1) the injuries of which the federal plaintiff complains were caused by a state court judgment; and (2) the federal plaintiff's suit invites the federal court to review and reject that judgment. *Id.*

A challenge for federal courts is deciding when the *Rooker-Feldman* doctrine applies. The Second Circuit found that "[t]he key to resolving this … lies in the second substantive *Rooker-Feldman* requirement: that federal plaintiffs are not subject to the *Rooker-Feldman* bar unless they *complain of an injury* caused by a state judgment." *Id.* at 87 (emphasis in original). The Court held this to be "the core requirement from which the others derive," and opined that "focusing on it helps clarify when the doctrine applies." *Id.*

### a)    Substantive Requirements

---

[4]    The *Rooker-Feldman* doctrine is named for two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

"The *Rooker-Feldman* doctrine is properly applied on a claim-by-claim basis." *In re Isaacs*, 895 F.3d 904, 912 (6th Cir. 2018); *see also Dorce v. City of New York*, 2 F.4th 82, 94, 101 (2d Cir. 2021) ("With respect to the difficult question of the application of *Rooker-Feldman* to this case, we conclude that some, but not all, of Plaintiffs' claims may proceed."). Generously construed, the claims asserted in Wang's complaint can be distilled into two categories: the first involving claims about the alleged denial of physical access to the child and school grounds; the second involving claims about the alleged denial of information about the child.

(1)    First Category of Claims

The first category of claims—the core of Wang's complaint—easily meet the substantive requirements of the *Rooker-Feldman* doctrine. Wang repeatedly alleges that the defendants "prevent[ed] [her] from picking up [the child]" from school and, in so doing, deprived her of "the right to fully and equally enjoy [the defendants'] place of public accommodation." Compl., Doc. No. 1, at ¶¶ 58, 139. Although Wang ascribes a discriminatory purpose to the defendants' actions, the plausible inference is that the defendants were acting under compulsion of a state-court order. Said differently, the defendants' actions were *produced* by the state court judgments.

The best support for that conclusion is the restraining orders' plain text. The September 2019 restraining order required that Wang not "be present at [the child's] school activities without the express consent of [Vytlacil]," and not "interfere with educational program of the child." Defs. Ex. B, Doc. No. 35-2, at 24–25. A separate restraining order, issued in July 2021, required that Wang "not contact [the child] in any manner" and "not contact [the child's] home, workplace, or others with whom the contact would be likely to cause annoyance or alarm to [the child]." *Id.* at 26. Another undated order required that Wang "[s]tay 100 yards away from [the child]." *Id.* at 27. Indeed, Wang admits that the school contacted her on September 4, 2019 to

inform her that she was not permitted on school grounds pursuant to a court order, and that policy would remain in place until Wang could "provide documentation from the court stating otherwise." *See* Compl., Doc. No. 1, at ¶ 59. Consequently, absent consent from Vytlacil or another state court order stating otherwise, the state court orders required the defendants to limit Wang's access to the child and school grounds. Thus, by challenging the defendants' actions, Wang is indirectly seeking to challenge the validity of the state court judgments.

(2)     Second Category of Claims

The second category of claims, however, presents a closer call. None of the protective orders in the record explicitly bar the school from providing Wang with information about the child. It is therefore plausible, though not alleged, that Wang seeks to challenge the school's application of the various orders of protection. In that scenario, *Rooker-Feldman* would not preclude those claims. To be clear, *Rooker-Feldman* "does not deprive a district court of subject-matter jurisdiction 'simply because a party attempts to litigate in federal court a matter previously litigated in state court.'" *Kinney v. Connecticut*, 622 F. Supp. 2d 1, 14 (D. Conn. 2009) (quoting *Hoblock*, 422 F.3d at 86). If a plaintiff raises "independent claims," even if those claims "involve the identical subject matter and parties as previous state-court suits," then the case is not barred by *Rooker-Feldman. Hoblock*, 422 F.3d at 85.

On this point, *Morrison v. City of New York*, 591 F.3d 109 (2d Cir. 2010), is instructive. In *Morrison*, the plaintiff brought a civil rights action challenging her two-week confinement in a mental health facility. 591 F.3d at 111. Although the state family court had ordered her confinement, the order provided that she should be held for two weeks "*in the event she was reasonably found to be dangerous to herself or to others.*" *Id.* at 113 (emphasis in original). The *Morrison*-plaintiff contended that she was challenging the reasonableness of the finding that she

9

was dangerous, not the court order requiring that determination. *Id.* As such, the Second Circuit held that the *Rooker–Feldman* doctrine was inapplicable because the complaint was more of "an attack on independent discretionary acts and decisions of the hospital staff that were not compelled by court order." *Id.* at 115.

Similar to *Morrison*, Wang theoretically could allege that at least some of the defendants' actions exceeded the scope of the state court orders. For example, the September 2019 order prohibits Wang from interfering with the educational program of the child, but it is an open question what constitutes as an interference. On a charitable reading of Wang's complaint, therefore, at least the second category of her claims would not be barred by *Rooker-Feldman*. *See Velazquez v. Logan*, 722 F. App'x 605, 607 (9th Cir. 2018) ("Where, as here, the plaintiff challenges the defendants' conduct and interpretation of a court order as opposed to the order itself, there is no forbidden de facto appeal of a state court decision.") (cleaned up).

b)      Procedural Requirements

Both category of claims, irrespective of the substantive requirements, likely do not satisfy the procedural requirements of the *Rooker–Feldman* doctrine.

Under Connecticut law, protective orders are final, appealable judgments. *Putman v. Kennedy*, 279 Conn. 162, 167 n.9 (2006); *see, e.g., L. D. v. G. T.*, 210 Conn. App. 864, 865 (2022) (defendant appealing the trial court's decision to grant the plaintiff's application for relief from abuse and issue a domestic violence order of protection). Finality for *Rooker-Feldman*, however, goes a step further. As the Second Circuit recently articulated in *Hunter v. McMahon*, "proceedings end for *Rooker-Feldman* purposes when the state courts finally resolve the issue that the federal court plaintiff seeks to relitigate in a federal forum." 2023 WL 4671281, at *5 (2d Cir. July 21, 2023) (cleaned up). Consequently, "[i]f a federal-court plaintiff's state-court

appeal remains pending when she files her federal suit, the state-court proceedings have not ended and *Rooker-Feldman* does not apply." *Id.*

A wrinkle in this case is that multiple restraining orders were in effect during the relevant period. Some expired, while others were modified along the way. The child custody litigation has been ongoing for several years, and Wang has appealed several times. It is not clear which orders she appealed, or what those respective outcomes were. An online search of the state appellate dockets confirms that Wang appealed at least some state protective orders. *See, e.g., V. V. v. V. V.*, Connecticut Appellate Court, Docket No. AC 44583; *V. V. v. V. V.*, Connecticut Appellate Court, Docket No. AC 44752; *V. V. v. V. V.*, Connecticut Appellate Court, Docket No. AC 45190.[5] But those dockets do not always specify which protective orders were the subject of those respective appeals.

An additional problem is that Wang has not been forthcoming about her litigation history. In fact, neither her 74-page complaint, or her opposition to the defendants' Rule 12(b)(1) motion makes explicit reference to the protective orders.[6] Given the nature of the state proceedings, I cannot access the family court dockets listed on the protective orders: two are electronically unavailable, Docket No. FA-20-5049453-S and Docket No. FA-22-5052692-S; and the other is effectively sealed, Docket No. FA-19-4073157-S.[7] Consequently, I am limited only to the orders that have been provided by the defense, and even those copies are incomplete because the defendants are also without access to the family court dockets.

---

[5]     Those dockets are available at: State of Connecticut Judicial Branch, Supreme and Appellate Court Case Look-up, https://appellateinquiry.jud.ct.gov/AppealNoInq.aspx (last visited Aug. 14, 2023).
[6]     To be clear, Wang acknowledges that there are ongoing state court proceedings. But she never admits to the existence of the various protective orders and instead cites primarily the Separation Agreement.
[7]     Those dockets are available at: State of Connecticut Judicial Branch, Superior Court Case Look-up–Civil/Family/Small Claims, https://civilinquiry.jud.ct.gov/ (last visited Aug. 14, 2023).

This is all to say that, absent more information, I cannot determine if, or, when the relevant protective orders became final.[8] Nor can I determine if those orders were final prior to the commencement of this lawsuit. Mindful of the Second Circuit's instruction that "*Rooker-Feldman* does not apply when state proceedings have neither ended nor led to orders reviewable by the United States Supreme Court," I cannot conclude on this record that the orders of protection being challenged were final for purposes of the *Rooker-Feldman* doctrine. *Hunter*, 2023 WL 4671281, at *5 (cleaned up).

　　　　2.　*Younger*

Under *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny, federal courts may abstain from hearing cases that would interfere with state criminal proceedings or with certain state civil proceedings. *See Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002). Abstention is appropriate where: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims. *Id.*

The second and third criterion are easily satisfied. The underlying controversy implicates an important state interest: domestic relations. Family law matters, including issues regarding child custody, implicate "an area of law that federal courts and Congress leave almost exclusively to state law and state courts." *Khalid*, 904 F.3d at 133; *see also Hirsch v. Kairey*,

---

[8]　　　Indeed, one appellate docket does specify that it is an appeal of a January 2022 protective order. *V. V. v. V. V.*, 218 Conn. App. 157, 162 (2023) ("On January 27, 2022, [Vytlacil] on behalf of [the child], filed the application for relief from abuse against [Wang] that is the subject of this appeal, together with a personal affidavit of supporting facts."). That appeal was not decided until March 2023, six months after this case commenced. *Id.* Any claims arising out of the January 2022 protective order, therefore, would not meet the second procedural requirement of *Rooker-Feldman*.

　　　　On the other hand, that same opinion acknowledges that Wang previously appealed other protective orders (though unclear which) and the court dismissed those appeals. *Id.* at 162 n.6 (citing *V. V. v. V. V.*, Connecticut Appellate Court, Docket No. AC 44583 (appeal dismissed April 20, 2021)). Claims arising out of that appeal would meet the second requirement of *Rooker-Feldman* because that appeal was dismissed prior to the commencement of this lawsuit.

2023 WL 4902749, at *4 (E.D.N.Y. Aug. 1, 2023) ("Courts within the Second Circuit have

regularly abstained based on *Younger* where plaintiffs seek … to enjoin ongoing divorce or child

custody proceedings."). Moreover, Wang was able to raise her constitutional claims in state

court. It is noteworthy that Wang repeatedly availed herself of the state courts, including the

Appellate Division, to litigate many of the same issues she now asks this Court to consider.[9] And

although the complaint does not clearly indicate whether Wang asserted any constitutional

claims in the state courts, she had adequate opportunity to do so. *See Middlesex County Ethics*

*Committee v. Garden State Bar Assoc.*, 457 U.S. 423, 431 (1982) ("Minimal respect for the state

processes, of course, precludes any presumption that the state courts will not safeguard federal

constitutional rights.").[10]

 The unresolved question, however, is whether Wang's proceedings are ongoing. For the

very reason that *Rooker-Feldman* does not clearly apply, the applicability of *Younger* is also

uncertain. In the general sense, there are ongoing custody proceedings in state court. And to the

extent that Wang seeks injunctive or declaratory relief[11] with respect to the constitutionality of

---

[9]     For example, Wang challenged the January 2022 protective order on multiple grounds, including that "the
court's issuance of a domestic violence restraining order improperly modified the parties' settlement agreement
regarding custody that was incorporated into a foreign divorce decree that was registered in Connecticut," and "the
court's issuance of a restraining order infringed on [Wang's] civil liberties as the parent of [the child]." *V. V.*, 218
Conn. App. at 159 n.9.

[10]     In a separate filing, Wang contends that, "[t]here is no Connecticut Superior Court Action between [her]
and any defendant in this [matter.]" *See* Pl. Reply Mem. in Supp. of Mot. for TRO, Doc. No. 39, at ¶ 21. Although
she is correct that the federal defendants are not parties in the state court action, that fact does not preclude
*Younger's* application to this case. It is of no moment that the federal defendants were not parties to the state court
proceeding because "*Younger* may apply to the claims of third-parties who are not directly involved in any pending
state proceeding." *Spargo v. New York State Comm'n on Jud. Conduct*, 351 F.3d 65, 82 (2d Cir. 2003); *see also
Cedar Rapids Cellular Tel., L.P. v. Mille*r, 280 F.3d 874, 881–82 (8th Cir. 2002) (The parties in federal and state
court need not be identical for *Younger* purposes, "where the interests of the parties seeking relief in federal court
are closely related to those of parties in pending state proceedings and where the federal action seeks to interfere
with pending state proceedings.") (cleaned up).

[11]     Wang also asserts claims for monetary damages. *See generally* Compl., Doc. No. 1. The Second Circuit has
held that "application of the *Younger* doctrine is inappropriate where the litigant seeks money damages for an
alleged violation of [section] 1983." *Rivers v. McLeod*, 252 F.3d 99, 101–02 (2d Cir. 2001) (citing *Kirschner v.
Klemons*, 225 F.3d 227, 238 (2d Cir. 2000)). But the basis for Wang's monetary damages is doubtful, as the entire
thrust of this action is to challenge the validity of the state court orders. As such, Wang cannot avoid application of
*Younger* (or any other abstention doctrine) because she has merely alleged monetary damages. *See, e.g.,*

protective orders that are not yet final, *Younger* clearly applies. The thornier question is whether *Younger* would apply to claims arising out of protective orders that are final. That is, *Younger* applies "when there is an ongoing state proceeding in which *the claim can be raised*." *Kirschner v. Klemons*, 225 F.3d 227, 236 (2d Cir. 2000) (emphasis added). It is not clear if that is the case here.

### 3.    *General Abstention Principles*

Notwithstanding that none of the doctrines set forth in the defendants' motion precisely fits the facts of this case, I am reminded of the general abstention principles and their purpose.

At its core, this case is about an ongoing child custody dispute. Admittedly, Wang does not style her complaint as custodial in nature and instead frames it as one alleging violations of constitutional and civil rights. She avoids discussion of the state court orders, focusing entirely on what she perceives to be alleged discrimination by the Foote School and its staff. Having parsed through her complaint, however, it is clear that her alleged injuries stem from her dissatisfaction with the outcomes rendered in the child custody proceedings. Some allegations make her discontent obvious. *See, e.g.,* Compl., Doc. No. 1, at 70 (requesting that this Court "[r]einstate Wang as a parent of [the child] at the Foote School"). Others are cloaked under the guise of a discrimination claim. *See id.* (requesting that this Court "[d]eclare that the decision to deny [Wang's] full access to the defendants' [s]chool was improper and void"). Either way, the outcome she seeks is the same: for this Court to effectively hold that she has, and has always

---

*Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 165 (E.D.N.Y. 2010), *aff'd*, 446 F. App'x 360 (2d Cir. 2011) (holding that *Rooker-Feldman* applied even where plaintiff sought monetary damages because it was "abundantly clear that the whole purpose of [the federal action was] to stop and undo the [state judgment]"); *see Kirschner*, 225 F.3d at 238 ("The Supreme Court has declined to reach the issue whether *Younger* applies to claims for money damages, but has noted that even if it does, the federal suit should be stayed, rather than dismissed, if the money damages sought could not be obtained in the pending state proceeding, even if the money damages sought could be obtained in a separate state proceeding.").

had, joint legal and physical custody of the child. For several reasons, this Court should not meddle in that analysis.

This case turns on which protective orders were in effect during the defendants' alleged violations.[12] Yet neither this Court, nor the defendants, can meaningfully access the family court or appellate dockets. That problem is muddied further by the complaint's omission of several relevant details. For example, Wang repeatedly cites to the Foreign Matrimonial Judgment and Article 2 of the Settlement Agreement, which awarded Wang joint legal custody of, and joint decision-making rights and responsibilities regarding the child. Compl., Doc. No. 1, at ¶ 63; *see also* Pl. Reply Mem. in Supp. of Mot. for TRO, Doc. No. 39, at ¶ 6 ("Since [Wang] and [Vytlacil] entered into the Settlement Agreement on June 18, 2015, the Settlement Agreement has been executed accordingly up the [d]efendants' intentional interference on September 4, 2019 …."). Missing from her complaint, however, is an allegation that in May 2019, the state court modified the dissolution judgment. *V. V.*, 218 Conn. App. at 161. That modified judgment awarded Vytlacil sole physical custody of the child and ordered that Wang's parenting time with the child be limited to supervised visitation at Vytlacil's discretion. *Id.* The state continued to issue various orders of protection, some of which modified what access, if any, Wang had to the child.[13]

Of the protective orders in the record, some are ambiguous. As a result, this Court would be left to interpret matters traditionally reserved to family courts, such as determining what it

---

[12]    In a separate filing (which Wang has incorporated into her opposition), Wang attaches exhibits with emails and correspondences that she has had with the Foote School. In April 2021, Wang received a letter from the Foote School stating that she was prohibited from coming to the school per a December 23, 2020 protective order. *See* Pl. Ex. P, Doc. No. 39-10. But in October 2020, another email states that the school was acting pursuant an August 29, 2019, and September 24, 2019 protective order. *See* Pl. Ex. N, Doc. No. 39-8.

[13]    Indeed, Wang moved to strike the protective orders and Vytlacil's affidavit from the record, incorrectly claiming that the exhibits are inadmissible, and the affidavit was not signed. *See* Pl. Mot. to Strike, Doc. No. 52; Pl. Mem. in Opp., Doc. No. 51, at 49. And where Wang does attach information about the state court proceedings, she redacts key information, only including what she believes will assist in her case. *See* Pl. Ex. BB, Doc. No. 51-7.

means to interfere with the educational activity of the child. I am reluctant to do that, particularly

when the best interests of a child are at stake. *See Reno v. Flores*, 507 U.S. 292, 310 (1993)

(noting that states have "special proficiency in the field of domestic relations, including child

custody") (cleaned up).

In a case presented with similar facts, the Seventh Circuit held that the district court

properly abstained. In *J.B. v. Woodard*, the Seventh Circuit held that abstention was proper

where the plaintiff brought constitutional due process claims arising out of an ongoing child

custody proceeding in state court. 997 F.3d 714 (7th Cir. 2021). Even though the plaintiff did not

expressly request modification of a child custody order, "the entire design of his federal action

[was] to receive a favorable federal constitutional ruling that can be used affirmatively or

offensively to shape—or perhaps change—the direction and course of the state court

proceedings," which was reinforced by his requests for declaratory and injunctive relief. *Id.* at

723. Therefore, the Seventh Circuit held that adjudication of the suit "threaten[ed] interference

with and disruption of local family law proceedings—a robust area of law traditionally reserved

for state and local government—to such a degree as to all but compel the federal judiciary to

stand down." *Id.* Additionally, the Seventh Circuit held that, dismissal, rather than a stay, was

appropriate because the state court's oversight of child custody matters would continue until the

children turned 18, and the Seventh Circuit was "unwilling to require th[e] case to sit on the

district court's docket for more than a decade." *Id.* at 725.

A similar outcome should follow here. I am aware that the Second Circuit has advised

that "there is little or no discretion to abstain in a case which does not meet traditional abstention

requirements." *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 523 (2d

Cir. 2001) (cleaned up). However, I believe cases of this type are the narrow sort of cases where

such discretion is warranted. *Woodard*, 997 F.3d at 723 (concluding that, in the context of a domestic relations proceeding, even where other abstention doctrines do not perfectly fit the case, "[t]o insist on literal perfection ... risks a serious federalism infringement."). Therefore, based on the information presented to me, I conclude that either *Rooker-Feldman*, *Younger*, or general principals of abstention deprives this Court of jurisdiction to hear Wang's claims.

      B.    <u>Leave to Amend</u>

Leave to amend a complaint may be denied as futile where there is a "substantive" problem with a suit such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 69 (2d Cir. 2002) ("[A] district court may deny leave to amend the complaint if the amendment would be futile.").

In light of Wang's *pro se* status, I will afford her an opportunity to amend. At this stage, it is not clear if an amendment would be futile. At oral argument, Wang seemed unfamiliar with the abstention doctrines. With the benefit of this Order, it is possible that Wang can cure the deficiencies identified in the present complaint by refining her claims, or alleging more facts about the state court proceedings that would permit this Court to determine if abstention is the proper course of action. Wang is advised that any amended complaint must establish the grounds for this Court's jurisdiction.

**IV.**    **CONCLUSION**

For the foregoing reasons, this Court abstains from exercising jurisdiction over Wang's complaint. The defendants' motion to dismiss, doc. no. 35, is **granted**.[14] Wang's motion for a temporary restraining order, doc. no. 30, is **denied** without prejudice. Wang is given leave to

---

[14]    Having dismissed this case for lack of jurisdiction, I do not reach the defendants' alternative arguments for dismissal.

amend her complaint. Any amended complaint must be filed within thirty (30) days of this

Order.

     So ordered.

 Dated at Bridgeport, Connecticut, this 14th day of August 2023.

                               /s/ STEFAN R. UNDERHILL
                               Stefan R. Underhill
                               United States District Judge